(Decided 18th February, 1873.)

---

## John S. Stansbury *vs.* Stephen M. Fogle.

*Practice.— What objections to Instructions not allowable in the Appellate Court.—Malicious Prosecution.— What is Probable cause.—Punitive damages allowable.—Prosecutor need not be Originator of prosecution, nor alone.— When knowledge of Prosecutor as to falsity of Representations a defence in case of False pretences.*

No objection can be made in the Court of Appeals to an instruction on the ground that it submitted a question of law to the jury, or that it assumed facts, unless it appear from the record that an objection for such defect was taken at the trial below.

Probable cause (for a criminal prosecution) is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offence of which he is charged.

On a suit for malicious prosecution the jury are at liberty to take into consideration all the circumstances of the case, and award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained in consequence of the defendant's wrongful act, but may also award exemplary or punitive damages as a punishment to the defendant for such wrongful act.

In an action for malicious prosecution it is not necessary for the plaintiff to show that the defendant was the originator of the proceedings against him; but if the defendant participated voluntarily in the prosecution of the plaintiff,

and it was carried on with his countenance and approbation, he is liable in damages, whether there were others who were concerned in it or not, provided the jury find the other facts necessary to render him liable.

Want of prudence on the part of the prosecutor in a case of false pretences is no defence: but where he knows that the representations constituting the false pretences are false at the time he parts with his goods, or where he is instructed and admonished by a law suit against him to place no reliance in them, he cannot claim to have parted with his property upon faith in their truth.

APPEAL from the Superior Court of Baltimore City.

The facts are sufficiently stated in the opinion of the Court.

*Exception.*—The plaintiff offered the following prayers :

1. If the jury shall believe from the evidence in the cause that the defendant instituted or caused to be instituted the prosecution under which the plaintiff was arrested, maliciously and without probable cause, and shall further find that said prosecution is terminated, then their verdict must be for the plaintiff.

2. If the jury believe from the evidence that said prosecution was instituted, or caused to be instituted, by the defendant under such circumstances as would not have induced a reasonable and dispassionate man to believe that the plaintiff was guilty of the crime so charged against him, then the jury may infer that the defendant was actuated by malice in instituting, or causing to be instituted, said prosecution, *while it is competent for the jury to infer malice from a want of probable cause, the question whether the defendant was actuated by malice or not, is one to be determined upon the whole evidence; and if upon the whole evidence the jury believe that the defendant did not act maliciously, then their verdict must be for the defendant.*

3. If the jury shall find a verdict for the plaintiff, they are at liberty to take into consideration all the cir-

cumstances of the case, and award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained in consequence of the defendant's wrongful act, but may also award exemplary or punitive damages as a punishment to the defendant for such wrongful acts.

The defendant offered the following prayers:

1. That in order to maintain the present action, it is necessary for the plaintiff to satisfy the jury that the alleged arrest, commitment and imprisonment of the plaintiff were caused or procured by the defendant, and that the mere fact that the defendant testified before the committing Justice, is not sufficient evidence that it was so caused or procured by him.

2. That it is further necessary for the plaintiff to satisfy the jury, that in respect to such arrest, commitment and imprisonment, (even if the jury should find that the defendant instituted or caused the same,) the defendant acted without reasonable or probable cause, and to constitute reasonable and probable cause, it is not necessary that the plaintiff should have been in fact guilty of the crime charged; but it is enough for the defendant's justification, if they find that he had reasonable ground to think that the plaintiff was guilty of the matter charged.

3. The burden is upon the plaintiff to prove that there was an absence of such probable cause for the prosecution as would justify an ordinarily prudent man in instituting the same, and not upon the defendant to prove the contrary.

4. It is further necessary for the plaintiff to prove that the defendant acted with malice; and if the jury find that the defendant did not act maliciously in the premises, but all that he did, tending towards the imprisonment of the plaintiff, was done under the advice and direction of counsel, and without malice on his own part, then the verdict must be for the defendant.

5. That if the plaintiff sold and delivered to the defendant the articles mentioned in the bill of sale offered in evidence, and represented to the defendant that he owned and had the right to sell said articles, and if upon the faith of the truth of said representation by the plaintiff, the plaintiff obtained from the defendant a certain grey horse, referred to in the commitment offered in evidence, and they find that said representation was not true, then there was probable cause justifying the charge upon which the plaintiff was committed, and the plaintiff cannot recover.

6. That the plaintiff is not entitled to recover, under the declaration in this case, any damages for injury resulting from contracting, while in jail, any contagious disease.

7. That in order to maintain the present action, it is necessary for the plaintiff (among other things) to satisfy the jury that the alleged arrest, commitment and imprisonment were caused by the defendant; and if they believe that the same were caused by Mr. Waterman, acting upon his own volition, and that the defendant did not authorize or ratify the same, then the mere fact that the defendant testified before the committing magistrate does not make the defendant responsible therefor in this action.

The Court (DOBBIN, J.,) granted the first and third prayers of the plaintiff as offered, and the second with the conceded addition in italics ; it also granted the second, third, fourth and sixth prayers of the defendant and refused his first, fifth and seventh.   To the rejection of his first, fifth and seventh prayers, the defendant excepted, as also to the granting of the prayers of the plaintiff.   The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, and ROBINSON, J.

*R. J. Gittings* and *A. W. Machen*, for the appellant.

Three things were necessary to be established in order to enable the plaintiff to maintain his action, viz: that the prosecution was made or instigated by the *defendant*, that there was a want of reasonable and probable cause, and that the defendant was impelled by malice. The circumstances of this case made it peculiarly important that the first of these requisites should be attended to. It has been thus defined by the Supreme Court of the United States: "The plaintiff must prove, in the first place, the fact of the prosecution, and that the defendant was himself the *prosecutor*, or that he *instigated* its commencement." *Wheeler vs. Nesbitt*, 24 *How.*, 549.

In this present case it is clear, that the prosecution complained of in the declaration was neither begun nor instigated by the defendant. The only circumstance which could connect him with it at all was his attendance before the justice; and that being fully explained in the evidence, the jury ought not to have been left to infer that it was conclusive against him. The defendant's first prayer should, therefore, have been granted. There was error in granting the plaintiff's first prayer. But certainly the defendant was, at least, entitled to have the question whether or not the alleged arrest, commitment and imprisonment—the grievance complained of in the declaration—were caused by him, presented to the jury. *Weston vs. Beeman*, 27 *Law. Journ. N. S. Exch.*, 57; *Burnap vs. Albert, Taney's Dec.*, 244.

The jury were not properly instructed in regard to the other necessary ingredient of *want of reasonable and probable cause*. The rule of the Common law, that it is for the judge, and not the jury, to determine whether the facts amount to probable cause, is stated with great clearness in Buller's Nisi Prius, page 14, upon the authority of the manuscript case of *Golding vs. Crowle*, (also reported *Sayer*, 1;) where a verdict for the plain-

tiff was set aside, "not as a verdict against evidence, but as a verdict against law." It has been repeatedly affirmed since. *Boyd vs. Cross,* 35 *Md.,* 194; *Munns vs. Dupont,* 3 *Wash. C. C.,* 37; *Douglas vs. Corbett,* 6 *El. & Bl.,* 511; *Walker vs. South Eastern R. Co.,* L. R., 5, C. P.,* 640; *Lister vs. Perryman,* L. R. 4 *Eng. & Ir., App.,* 521; *Davis vs. Hardy,* 6 *B. & C.,* 231; 1 *Taylor's Ev.,* sec. 26.

Here, even had the action been framed, (as in *Weston vs. Beeman.* 27 *L. J. N. S. Exch.,* 57; it was.) upon a malicious adoption and prosecution of a proceeding begun by a third party, there was, as that case shows, no want of probable cause on the defendant's part—brought into the affair at the stage and under the circumstances in which he was—for doing all that he did do. *Brooks vs. Blaine,* 39 *Law Journ. N. S. C. P.,* 1; *Gibson vs. Veasey,* 15 *Law Times, N. S.* 586; *Gilbert vs. Emmons,* 42 *Ill.,* 144.

But, upon another, distinct ground there was no want of probable cause. There was abundant evidence that the plaintiff was actually guilty of the charge upon which he was held and committed. That this fact is always a complete bar to any action for malicious prosecution is undeniable; the unsuccessful result of the criminal case being no criterion. *Hailes vs. Marks,* 7 *Hurl. & Nor.,* 61, 63, 64.

There was ample evidence to support the defendant's fifth prayer, and those facts made out such a *prima facie* case of false pretences, that upon them a jury would be warranted in finding the party guilty of the offence— *Matthews Digest,* 169. There was then probable cause.

An indictment lies for obtaining goods by false pretences, where a party represents himself to be the owner of property which does not belong to him, and thus fraudulently induces the owner to sell the goods to him on credit. *The People vs. Kendall,* 25 *Wend.,* 399.

Stansbury *vs.* Fogle.

To establish a case of false pretences, it is not necessary that the representations made should have been the sole inducement ; the rule being that it is sufficient if the pretences proved to be false had such a material effect in procuring the credit, or inducing the party defrauded to give up his property, that without the existence of its influence upon his mind he would not have parted with it. *The People vs. Haynes,* 11 *Wend.,* 566 ; *Reg. vs. Jennison,* 9 *Cox C. C.,* 158. It is clear therefore, that the defendant's fifth prayer ought to have been granted. *Reg. vs. Naylor,* 10 *Cox C. C.,* 149 ; *Reg. vs. Fry,* 7 *Cox C. C.,* 394.

It was the more important that the Court should properly instruct the jury as to what would amount in law to want of probable cause, for the reason, that, by granting the plaintiff's second prayer, the Court, expressly authorized them to infer malice from the want of probable cause. Hence, not only in refusing the defendant's prayers, but also in granting the plaintiff's second and third prayers, the Court erred. *Boyd vs. Cross,* 35 *Md.,* 194 ; *Cecil vs. Clark,* 17 *Md.,* 524 ; *Morrison and Kildow vs. Hammond's Lessee,* 27 *Md.,* 616, 617 ; *Mayor, &c., of Baltimore vs. Poultney & Trimble,* 25 *Md.,* 30, 34 ; *Dunham vs. Clogg,* 30 *Md.,* 292. None of the granted prayers of the defendant at all supplied the place of those that were refused.

*James W. Denny* and *W. C. N. Carr,* for the appellee.

The prayers of the Plaintiff were properly granted by the Court.

The first prayer sets forth—

1st. The facts of the prosecution.

2d. That the defendant was the prosecutor, and instigated it.

3d. That the prosecution was ended.

4th. That it was instituted maliciously, and without reasonable or probable cause. 2 *Greenleaf on Ev., sec.*

450, 455; *Wheeler vs. Nesbitt,* 24 *Howard S. C.,* 549; *Boyd vs. Cross,* 35 *Md.,* 194.

The plaintiff's second prayer, it is believed, presents no difficulty.

After connecting the defendant with the prosecution, and defining probable cause, the instruction leaves the jury at liberty, in the absence of probable cause, and in the absence of any proof or circumstances to satisfy them to the contrary, to find the prosecution was malicious, and the question of malice, in the absence of probable cause, is to be determined from all the circumstances of the case. *Wheeler vs. Nesbitt,* 24 *Howard,* 552; *Boyd vs. Cross,* 35 *Md.,* 194; *Munns vs. Dupont.* 3 *Wash. C. C. R.,* 31; *Foshay vs. Ferguson,* 2 *Denio,* 617: *Cabiness vs. Martin,* 3 *Devereux,* 454; *Cecil vs. Clark,* 17 *Md.,* 524; *Turner. vs. Walker,* 3 *G. & J.,* 386; *Spengler vs. Davy,* 15 *Grat.,* 381; *Camp. R.,* 244; 1 *Hilliard on Torts,* 464; 2 *Greenleaf on Ev.,* secs. 453, 454; *Williams vs. Taylor,* 6 *Bing.* 183; 1 *American Lead. Cases,* 213; *Hull vs. Suydam,* 6 *Barb. S. C. R.,* 83; *Haddrick vs. Heslop,* 12 *Adol. & Ellis,* 267, *N. S.*

The plaintiff's third prayer presents the question of compensatory and exemplary damages. *Sedgwick on Damages,* 522; 2 *Greenleaf on Ev.,* sec. 456; *Zimmerman vs. Helser,* 32 *Md.,* 277; 1 *Hilliard on Torts,* 465; *Sniveley vs. Fahnestock,* 18 *Md.,* 392; *Ridgely vs. Bond and Wife,* 17 *Md.,* 23; *Cromwell vs. Owings,* 7 *H. & J.,* 60; *Shafer vs. Smith,* 2 *H. & J.,* 68; *Tillotson vs. Cheatham,* 3 *Johnson,* 56.

The defendant's first, fifth and seventh prayers were properly rejected.

The first and seventh are similar in structure, and so framed as to mislead the jury from the subject for their consideration.

The procuring the arrest is not the question to be determined in this suit, the facts are not in issue as defendant's

Stansbury *vs.* Fogle.

second prayer admits, but the gist of the action is whether the arrest was procured maliciously, and without probable cause. This is entirely omitted. *Harkrader vs. Moore, Md. Law R., Nov.* 8.

The second part of the prayer is defective for the same reason. "*The mere fact*" *of the defendant's testimony caused the plaintiff's arrest,* and if that were the only "*mere fact*" in the case, it alone, unsupported by any evidence on which to base his belief, and without any foundation, would be evidence of want of probable cause, and of a malicious intent.

Besides, the plaintiff's second prayer directs the jury that while they may infer malice from want of probable cause, that *all* the circumstances of the case must be considered ; and to grant an instruction on one mere fact, when there are so many others to be considered, and disregarding the motives of the defendant in doing that mere fact, it is submitted would be illegal and contradictory. *Hilliard on Remedies for Torts,* 369—*case in note* ; 2 *Chitty's Pleading,* 609 *c* ; *Cotton vs. Huidekoper,* 2 *Penn. Rep.,* (*Penrose & Watts,*) 149, *&c.*; *Jones vs. Nicholls,* 3 *Moore & Payne,* (*full Ed.*) 15, *&c.*

This prayer is defective because it instructs the jury to find that certain facts discharge the appellant from responsibility. Such a prayer would be irreconcilable with the plaintiff's prayers granted by the Court as to the existence of malice and want of probable cause. *Lohrfink vs. Still,* 10 *Md.,* 530.

The mere fact of the arrest, wilfully and purposely made to the injury of another, without probable cause, is sufficient to induce the belief that it was malicious. *Dubois vs. Keates,* 4 *Jur.,* 148, *and* 3 *Perry & Dav.,* 306 ; 2 *Greenleaf on Ev., sec.* 453.

The defendant's second, third and fourth prayers which were granted, will not be considered. It cannot be said that with these instructions before the jury, the defen-

dant's case ·was not fully and fairly before them on every question of law presented in the case, and material for defendant's defence.

The fifth prayer was very properly rejected for numerous reasons.

False pretenses must be of some existing fact, made for the purpose of inducing the prosecutor to part with his property.   *Codrington's Case,* 1  *Car. & P.,* 661 ; *Rex vs. Dale,* 7 *Car. & P.,* 352 ; *Rex vs. Williams,* 7  *Carr. & P.,* 354 ; *Goodhall's Case,* 1 *Eng. C. C.,* 461.

The seventh prayer of the defendant is liable to the same objections as the defendant's first prayer—''among other things'' in a prayer is certainly vague, indefinite and liable to mislead, and ought not to be granted.   Tort-feasors are severally liable for the part they wrongfully take in a prosecution.   *Bicknell vs. Dorion,* 16 *Pick.,* 468 ; 2 *Greenleaf on Ev., page* 512 ; *Cotton vs. Huidekoper,* 2 *Penn. R.,* 149 *by P. & W.*

The want of probable cause and malice being the gist of this· action, the instruction as requested ignores the actual belief and intent of the defendant at the time he made the arrest, and therefore it was properly rejected.

The mere fact that the defendant testified may make him responsible, if he acted maliciously and without probable cause, and the existence of these elements is ascertained by the jury from all the circumstances in the case, and therefore to grant the defendant's seventh prayer would be irreconcilable with the law of the case as admitted by the defendant in his addition to the plaintiff's second prayer.   2 *Chitty's Pleading,* 609 *c.*

MILLER, J., delivered the opinion of the Court.

In several very recent cases, one of which (*Cooper vs. Utterbach, ante.* 282,) has been decided at the present term, this Court has had occasion to consider the general

rules of law governing actions for malicious prosecution and false imprisonment, and we shall therefore proceed at once to determine the particular questions presented for review by this appeal.   These are the rulings of the Superior Court in granting the three prayers offered by the plaintiff, and rejecting the defendant's first, fifth and seventh prayers.

1st.  The objections to the plaintiff's first prayer are that it assumes as facts (what was clearly established by the proof in the case,) that the plaintiff was arrested and imprisoned upon a criminal charge, and that the prosecution against him had been terminated by his exoneration and dischaage, and that it submits to the jury a question of law in allowing them to find that such prosecution was *without probable cause*.   But it does not appear from the record that objection to the prayer upon either of these grounds was taken at the trial.   This Court is therefore precluded by its Fourth Rule and Regulation respecting appeals, from considering either of these objections, no matter how well founded and fatal to the judgment they might be if properly presented for revision.   That Rule, which was in force when this case was tried, was made and prescribed by the Judges of the Court of Appeals under and by authority of the eighteenth section, of the fourth article of the Constitution, and by virtue thereof has "the force and operation of law until rescinded, changed or modified by the said Judges or the General Assembly."  It provides among other things that no instruction *actually given* shall be deemed by the Court of Appeals to be defective by reason of any assumption therein of *any fact*, or because of a *question of law* having been thereby submitted to the jury, unless it appear from the record that an objection thereto for *such defect* was taken at the trial. It is a rule of easy observance, is in strict accordance with previous legislative enactments upon the same subject, and tends to prevent expense, delay and hindrance of justice

resulting from reversals of judgments upon grounds not presented to or considered by the tribunals that rendered them. If these objections to this prayer had been suggested to the opposing counsel, or to the Court in the trial of the case, it would have been easy to obviate them by a different framing of the instruction, or if so presented and overruled by the Court, it was equally easy to make that fact apparent upon the record.

2d. The plaintiff's second prayer is addressed to the question of malice. As originally presented it asked the Court to instruct the jury that if they believed from the evidence that the prosecution against the plaintiff was instituted or caused to be instituted by the defendant, *under such circumstances as would not have induced a reasonable and dispassionate man to believe that the plaintiff was guilty of the crimes so charged against him,* then they may infer that the defendant was actuated by malice in instituting or causing the institution of such prosecution. To this was then appended this *conceded* addition: "While it is competent for the jury to infer malice from a want of probable cause, the question whether the defendant was actuated by malice or not is one to be determined upon the whole evidence, and if upon the whole evidence the jury believe that the defendant did not act maliciously, then their verdict must be for the defendant," and with this addition the prayer was granted. As was said in *Boyd vs. Cross,* 35 *Md. Rep.,* 197, "Malice is a question of fact for the jury, and its existence may be and most generally is inferred from the want of probable cause for the prosecution, but it does not necessarily follow that because there is an absence of probable cause the defendant must have been actuated by malice. The presumption of malice resulting from the want of probable cause is only *prima facie,* and may be rebutted by the circumstances under which the defendant acted." This prayer with its conceded addition gave the defen-

dant the full benefit of this law, and the only objection that
has been urged to it is that it gives an erroneous defini-
tion of want of probable cause.   In this respect the prayer
contains a simple negation of what in law constitutes
probable cause.   That which is generally considered the
best definition of these terms is the one given by *Mr. Jus-
tice Washington* in *Munns vs. Dupont,* 3 *Wash. C. C. Rep.,*
31, cited with approval in *Boyd vs. Cross,* viz: ''A rea-
sonable ground of suspicion supported by circumstances
sufficiently strong in themselves to warrant a cautious
man in his belief that the person accused is guilty of
the offence of which he is charged.''   But it is not
necessary to follow the precise words of this definition.
It is sufficient if language of equivalent import is used.
Thus in *Cooper vs. Utterbach,* the Court's instruction that
probable cause means the existence of such facts and cir-
cumstances as would excite the belief in a reasonable mind
acting on the facts within the knowledge of the defendant,
that the plaintiff was guilty of the crime for which he was
prosecuted, was held to be identical in meaning with that
adopted by Judge Washington, and the appellee's second
and fourth prayers affirmed in that case, define want of
probable cause in very nearly the exact language employed
in the instruction we are now considering.   Again, the
jury in this case were instructed at the instance of the
defendant himself, by the granting of his third prayer,
that the burden is upon the plaintiff to prove that there
was an absence of such probable cause for the prosecution
*as would justify an ordinarily prudent man in instituting
the same,* and not upon the defendant to prove the con-
trary.   In our judgment the language of the prayer in
this respect is equivalent in meaning to that sanctioned
and approved by adjudged cases of the highest authority.
In addition to those already cited we refer to the cases of
*Wheeler vs. Nesbitt,* 24 *How.,* 551, 552; *Humphries vs.
Parker,* 52 *Maine* 505; *Spangler vs. Davy,* 15 *Grattan*
388, and to 1 *Amer. Lead. Cases,* 213, where the annota-

tors in their notes to the case of *Munns vs. Dupont* have collected a large number of cases on this point.

3rd. The plaintiff's third prayer is directed to the question of damages. It asserts, that if the jury shall find a verdict for the plaintiff, (that is to say, if they first find every thing necessary to support the action mentioned or assumed in the preceding prayers, including the finding upon the whole evidence, that the defendant in instituting or causing the institution of the prosecution, *was actuated by malice,*) then they are *at liberty* to take into consideration all the circumstances of the case, and award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained, in consequence of the defendant's wrongful act, but may also award exemplary or punitive damages, as a punishment to the defendant for such wrongful acts. The correctness of this instruction, was not seriously questioned in argument, and we know of no authority which has decided that, in an action like the present, and under such circumstances as this case discloses, the jury is not at liberty to award exemplary or punitive damages. The case in all its features, is wholly unlike that of *Sears vs. Hathaway*, 12 *Cal.*, 277, referred to by the appellant's counsel.

4th. The defendant's first and seventh prayers are addressed to that branch of the case which relates to the defendant's participation in the prosecution of the plaintiff. Upon this subject there is much conflicting testimony. These facts however appear to be undisputed; the plaintiff was arrested by a police officer in the law office of Mr. Waterman, on the 10th of March, 1870, the defendant and Waterman both being present at the time; he was then taken to a magistrate's office by the policeman, accompanied by the defendant and Waterman; the officer at the time had no warrant for his arrest, and no warrant for that purpose had then been issued; Water-

man then made a statement or charge against the plain-
tiff, as to his having obtained a grey horse from the
defendant; the defendant was then questioned in refer-
ence to it, both by the magistrate and Waterman, whom
the magistrate regarded as defendant's counsel, and the
defendant then made oath to the truth of the facts he
had testified to, and the plaintiff was then committed to
jail, under a warrant of commitment issued by the magis-
trate in the usual form, charging him with obtaining
from John S. Stansbury, a grey horse under false pre-
tences; he remained in jail until the 16th of March,
when he was released on bail, and at the following May
Term of the Criminal Court was discharged, upon request
of the grand jury, who had first summoned, sworn and
examined the defendant and his son, who had been re-
turned by the magistrate as witnesses for the State.

There was evidence offered on the part of the plaintiff
tending to show that this arrest and imprisonment was
directly caused or procured by the defendant,—that he
was in fact the originator of the prosecution, and the
plaintiff's prayers leaving it to the jury to find that the
prosecution was instituted, or caused, or procured to be
instituted by the defendant, are based on that view of
the testimony. There was however, evidence offered on
the part of the defendant tending to show that his agency
or participation in the matter was not that of an origi-
nator of the proceedings, nor was it necessary he should
have been, in order to make him liable in this action
provided the case was in other respects made out against
him. Two persons may be parties to an arrest and im-
prisonment, and both be liable; one may be the active
originator and promoter of the prosecution, and the
other may voluntarily aid and assist therein, either by
direct personal participation, or by instigation and advice.

While mere passive knowledge and consent to the acts
of another, is not sufficient to render a party liable,

(*Gilbert vs. Emmons*, 42 *Ill.*, 143,) yet voluntary aid and assistance undoubtedly will. The first prayer of the appellee in *Cooper vs. Utterbach*, approved by this Court, was to the effect, that if the jury found from the evidence that the defendant *aided* and *assisted* in procuring the arrest and prosecution of the plaintiff, and *aided* and *contributed* to said prosecution, then he is liable to be sued by the plaintiff in this action, provided, the jury under the instructions of the Court, shall find the other facts necessary to render him so liable. So, in *Cotton vs. Huidekoper*, 2 *Penna. Rep.*, (*Penrose & Watts*,) 143, the Court state what is unquestioned law, "if the defendant participated *voluntarily* in the prosecution of the plaintiff and it was carried on with his countenance and approbation, he is liable in damages, whether there were others who were concerned in it or not."

The evidence in this case clearly shows that the defendant participated in the prosecution, at least to the extent of giving it voluntary aid and assistance. For assuming the police officer was called in and directed to arrest the plaintiff by Mr. Waterman acting upon his own volition, still·the defendant had been present at the previous interview, as testified to by the witnesses in which the plaintiff was told in effect that he had obtained the horse from the defendant upon the strength of representations which were false. And he was also present when the arrest was made, and then *without any legal compulsion*, he accompanied the parties to the magistrate's office, and there testified under oath, and upon his sworn testimony, the commitment in the usual form was made out, by virtue of which the plaintiff was imprisoned. This of itself constitutes such voluntary aid and assistance in the prosecution as would render the defendant liable, if the other essential facts of want of probable cause and malice were established. The great defect in the two prayers we are now considering, is, that they both ignore

altogether this law as to voluntary aid and assistance, which, in view of the testimony in the case, should not have been omitted in instructions like these, which profess to state what was essential to the maintenance of the action  Each of them in unqualified terms asserts, that in *order to maintain the present action, it is necessary* for the plaintiff to satisfy the jury that the alleged arrest, commitment and imprisonment of the plaintiff were, as expressed in the first prayer, *"caused or procured,"* and as expressed in the seventh prayer, *"caused"* by the defendant, whereas we have shown, that voluntary aid and assistance in the prosecution was sufficient. Assuming therefore, (without so deciding,) that the additional parts of each of these instructions standing by themselves, or connected with true antecedent legal propositions would have been correct, still being coupled with an insufficient and erroneous statement of the *law of the case*, the prayers were incorrect and misleading, and were hence properly rejected. In so far as the testimony might warrant an instruction exonerating and protecting the defendant, by reason of his having acted in the matter under the advice and direction of counsel, the granting of his fourth prayer gave him the benefit of all the law on that subject to which he was entitled.

5th. The remaining question is as to the propriety of the rejection of the defendant's fifth prayer. In considering this question it is necessary to notice an instruction given at the instance of the defendant himself. The Court granted his second prayer by which the jury were told that it is further necessary for the plaintiff to satisfy them that in respect to the alleged arrest, commitment and imprisonment, (even if they should find the defendant instituted or caused the same,) the defendant acted without reasonable or probable cause, and to constitute reasonable and probable cause, it is not necessary that the plaintiff should have been in fact guilty of the crime

charged, but it is enough for the defendant's justification if they find he had reasonable ground to think that the plaintiff was guilty of the matter charged. Having obtained this instruction in these broad terms, by which the jury were told it was enough to justify the defendant and therefore defeat the action against him, if they could find from the testimony he had reasonable ground *to think* the plaintiff was guilty of the offence charged, whether he was so in fact or not, it is difficult to perceive what further instruction upon the question of probable cause he had the right to ask. In our judgment, the Court having granted this instruction at his instance, not only leaving the question of law to the jury as he requested, but stating that law in the most favorable terms for him, were quite right in rejecting any additional instruction on the same subject, and for this reason alone, there was no error in the rejection of his fifth prayer.

But again, what is this fifth prayer? It asserts that if the plaintiff sold and delivered to defendant, the articles mentioned in the bill of sale offered in evidence and represented to the defendant that he owned and had the right to sell said articles, and if upon the faith of the truth of said representation by plaintiff he obtained from the defendant a certain grey horse referred to in the commitment offered in evidence, and the jury find such representation was not true, then there was probable cause justifying the charge upon which the plaintiff was committed, and the plaintiff cannot recover.

This prayer is based solely upon a portion of the testimony given by the plaintiff himself as a witness. It is now the established doctrine, both in this country and in England, that what facts and circumstances amount to probable cause is a question of law, but whether these facts and circumstances exist in the particular case is for the jury. In this State the jury are instructed hypothetically as to what constitutes probable cause, leaving it to

them to find the facts embraced in the hypothesis.   35 *Md. Rep.*, 197.   But when a Court has to deal with such a case, after the evidence is all in, it would be highly improper to allow a particular part of the testimony, disconnected from all the other conceded facts and circumstances of the case, to be selected as the hypothesis, and upon that alone to declare there was probable cause for the prosecution, and thus defeat the action.   Such a course would, in many instances, defeat the ends of justice.   It appears from the proof in this record that the plaintiff, for many years prior to 1869, had pursued the business of a huckster, and during that period had dealings with the defendant who was a wholesale and retail grocer in Baltimore city.   In the spring of 1869 the plaintiff sold to the defendant two huckster's wagons, and three horses with harness and gear, and conveyed the same to him by bill of sale, with warranty of title, dated the 19th of May of that year, for the consideration expressed in the deed of $737.   At the time of this sale the plaintiff represented the property to be his, that he had a right to sell it, and no third party had any claim upon it.   The agreement between them as to the payment of the purchase money, was that about $200 of it should go in extinguishment of an *antecedent debt* for that amount due by the plaintiff to the defendant, and the residue should be paid in two or three weeks; the defendant, however, never paid any of this purchase money, and it does not appear that he was ever the worse off by a single dollar on account of this transaction.   He allowed the plaintiff to remain in possession of the property, and early in June following it was taken by the Sheriff under a writ of replevin from the Court of Common Pleas at suit of Wm. G. Wilson against the defendant, and it then appeared Wilson claimed the property as owner by virtue of a purchase thereof from the plaintiff some time in the preceding winter.   After the writ of replevin had been execu-

ted, and Wilson's claim to the property had thus been made known to the defendant in the most formal and explicit manner by a suit at law, the plaintiff, some time in the latter part of June or in July, came to the defendant, and said he was out of employment, but if he had a horse he could borrow a wagon, and carry on a huckstering business. The defendant thereupon purchased a grey horse at a cost of about $40 or $45, and delivered it to the plaintiff. The plaintiff swears the horse was merely *loaned* to him. The defendant swears he sold the horse to the plaintiff upon the understanding that the price thereof would be deducted from the balance due upon the purchase money mentioned in the bill of sale; and his son swears he supposed that in case his father was successful in the replevin suit, the horse would belong to the plaintiff, but if not so successful the horse would come back to his father or be paid for. But whatever may have been the understanding of the parties in this respect it is clear the plaintiff did not obtain the horse until more than a month after the bill of sale, and not until after the property had been replevied by Wilson. The defendant further swears, (and this is the testimony upon which the prayer in question is based,) that this purchase and delivery of the horse were in consequence of and in reliance upon the representations of the plaintiff, *then again repeated by him*, that he owned all the articles mentioned in the bill of sale at the time of its execution, and had full right to sell the same, and that Wilson had no interest therein, nor ground to claim the same. But the defendant then well knew that the truth of these statements was denied and questioned in the most solemn form; he knew that Wilson claimed the property by virtue of a previous purchase from the plaintiff, and had asserted that claim by a law suit actually commenced against himself. Though the general rule is that want of prudence on the part of the prosecutor in a case of false pretences is no defence if

he was really imposed upon, yet there are some exceptions to it, and it is well settled that if a party knows the representations to be false at the time he parted with his property, he cannot claim he was influenced by them.  2 *Wharton's Amer. Cr. Law*, secs. 2126 and 2128 to 2131. Here though the defendant might not have known that the representations were absolutely false, yet he was instructed and admonished by the law suit against him to place no reliance upon them, and after this it was his own folly to have relied upon them, when reiterated, or to have parted with property upon faith in their truth. Indeed it would seem he could not possibly have done so except upon the hope or expectation that the plaintiff would testify under oath, as a witness in the replevin suit, to the truth of what he had thus stated.   But further the plaintiff after obtaining the horse used it in his business as a huckster, and it does not appear he ever made any attempt to sell or dispose of it, but on the contrary the horse, which was blind, remained in his possession and died on his hands before this prosecution was instituted. The prosecution was not instituted until more than eight months after he had obtained the horse, and not until he had said to the defendant and his counsel that he would not testify in the replevin suit that the property there involved did not belong to Wilson.   Immediately upon his making this statement he was arrested and imprisoned upon the charge of having obtained this horse nearly nine months previously by means of false pretences.   In this state of case we are of opinion the Court not only committed no error in rejecting this prayer as offered, but could properly have refused to grant any instruction to the effect that there was probable cause for this prosecution.

We have carefully examined all the numerous authorities cited in argument, and particularly the cases of *Hailes vs. Marks*, 7 *Hurl. & Nor.*, 56, and *Weston vs. Beeman, et al.* 27 *Law Jour. N. S.*, (*Exch. Rep.*) 57, which

were especially relied on by the appellant's counsel, but can discover nothing in either of them inconsistent with the conclusions and views we have reached and expressed in this opinion. We have also given to the case especial care and consideration, because of our thorough conviction of the good sense and propriety of the observations of *Mr. Justice Washington,* which we have cited with approval in *Boyd vs. Cross,* 35 *Md. Rep.,* 199, but we find in this case no ground of error subject to our revision in the rulings of the Court to which exception was taken, and its judgment must be affirmed.

*Judgment affirmed.*

(Decided 18th February, 1873.)