WILLIAM T. THELIN and THE BALTIMORE AND OHIO
RAILROAD COMPANY vs. UPTON W. DORSEY.

*What is essential to a Recovery in an Action for Malicious prose-
cution— Want of Probable cause a mixed question of Law and
fact—Probable cause—Evidence—Issue of Fraudulent Rail-
road tickets—Sufficient ground to justify a search warrant.*

In order to enable a plaintiff to recover in a suit for malicious
prosecution, he will be required, in addition to the fact that he
was prosecuted and acquitted, to show that he was prosecuted at
the instance of the defendant, and that such prosecution was both
malicious and without probable cause on the part of the defendant.

The want of probable cause is a mixed question of law and fact. As
to the existence of the facts relied on to constitute the want of pro-
bable cause, that is a question for the jury; *but what will amount
to the want of probable cause in any case, is a question of law for the
Court.*

If the evidence adduced be legally insufficient to be submitted to the
jury to prove each of the elements of the plaintiff's case, his action
will be pronounced groundless, and the defendant not be called on
for his defence.

Probable cause is a reasonable ground of suspicion, supported by
circumstances sufficiently strong in themselves, to warrant a cau-
tious man in believing the party accused to be guilty.

In an action for malicious prosecution on a charge of selling a fraud-
ulent railroad ticket, the defendant may introduce evidence of his
having had knowledge, anterior to the charge, of the sale of fraudu-
lent tickets by the plaintiff on other occasions.

An officer of a railroad company having reasonable grounds for sup-
posing a person had in his possession fraudulent tickets of the
company, is justified in proceeding by search warrant to ascertain
that fact; and the failure to find such tickets does not show that
he had not sufficient ground to justify him in instituting the
search.

Nor would the failure to find any such tickets, be necessarily suffi-
cient to convince a reasonably prudent and cautious man, that the

suspected person had not fraudulently issued a ticket, which prior to the search he was suspected of issuing; or even might not still have others in his possessson, though none were found in the place which was searched.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*First, Second, Third* and *Fourt Exceptions,* not passed upon by the Court.

*Fifth Exception.*—At the close of the evidence the plaintiff offered the seven following prayers:

1. That if the jury find from the evidence, that the defendants instituted, or caused to be instituted, or aided or assisted in the institution or carrying on of the prosecutions under which the plaintiff was arrested, maliciously and without probable cause, and that the said prosecutions were terminated before the commencement of this action by the acquittal and discharge of the plaintiff, then the plaintiff is entitled to recover.

2. That probable cause, as used in the plaintiffs first prayer, means a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief, that the person accused is guilty of the offence of which he is charged.

3. That if the jury find that the defendants instituted or caused to be instituted, or aided or assisted in the institution or the carrying on of the prosecutions of the plaintiff on the charges set out in the *narr.,* and that the circumstances connected with the transaction out of which said prosecutions arose, were not such as would induce a reasonable dispassionate man to believe the plaintiff guilty of the charges made against him, and induce such a man to have undertaken such prosecutions from public motives, then there was no probable cause for such prosecutions, and the jury may infer in the absence of sufficient proof, to satisfy

Thelin and Balt. & Ohio R. R. Co. *vs.* Dorsey.

them to the contrary, that said prosecutions were malicious in law, and if they so find, then their verdict must be for the plaintiff.

4. That if there was any material fact connected with the transaction out of which the criminal prosecution against Dorsey arose, which was known to the defendants or to the persons through whom the jury may find the defendants communicated with the State's Attorney, to obtain his advice, and which was not communicated to the State's Attorney by design or otherwise; or, if the jury find that there was any material fact relating to said criminal charge against Dorsey, which the defendants might, by reasonable diligence, have discovered, and which was not disclosed to or known by the State's Attorney at the time his advice was obtained, then his advice to the defendants is no defence in this action.

5. That even if the jury find that at the time the defendants took the advice of the State's Attorney, they disclosed to him all the facts relating to the criminal charge against Dorsey then known to them, and which they could by reasonable diligence have ascertained, yet if the jury find that after the defendants had obtained said advice, and before they had produced witnesses before the Grand Jury, the defendants knew, or by reasonable diligence, might have known any other material facts relating to said criminal charge, and that the defendants caused witnesses to appear before the Grand Jury without disclosing said other facts to the State's Attorney, then the advice of said State's Attorney constituted no defence in this action.

6. That if the jury shall find for the plaintiff the measure of damages is such an amount as they find will compensate the plaintiff for his actual outlay and expenses about his defence in the criminal trial, and for his loss of time and for the injury to his feelings, person and character by his arrest and prosecution, by reason of the defendants' wrongful act, and may also award exemplary or punitive damages as a punishment to the defendants.

7. That if the jury find from the evidences that the Balto. & Ohio R. R. Co., acting through Wm. T. Thelin, its auditor, and the said Thelin personally caused the search warrant offered in evidence in this case to be prepared by the counsel of the company, and said Thelin made the affidavit thereto maliciously and without any reasonable or probable cause, and under said warrant the plaintiff's premises were searched by officer Witters, and one Carter, a detective in the employ of the Balto. & Ohio R. R. Co., and no goods found, then the plaintiff is entitled to recover under the amended count in the declaration; and probable cause as herein used,—means such reasonable ground of suspicion supported by circumstances, sufficiently strong in themselves, as would warrant a cautious man in believing that some of the articles described in said search warrant were at the time in the possession of Mr. Dorsey.

And the defendants offered three prayers, which were granted, but are omitted as their insertion is deemed unnecessary. The defendants also filed, severally, the following exceptions to the granting of the plaintiff's prayers:

The defendant, William T. Thelin, specially excepts to the granting of the prayers offered on the part of the plaintiff, because there is no evidence in the cause legally sufficient to sustain the same as against the said defendant, and the said exception is made by the said defendant to the granting of the first, second, third, fourth, fifth, sixth and seventh prayers of the plaintiff, severally, and to the granting of each and every one of said prayers.

The defendant, the Baltimore and Ohio Railroad Company, specially excepts to the granting of the prayers offered on the part of the plaintiff, because there is no testimony in the cause legally sufficient to sustain the same against the said defendant; and the said exception is made by the said defendant to the first, second, third, fourth, fifth, sixth, and seventh prayers of the plaintiff, severally, and to the granting of each and every one of said prayers.

Thelin and Balt. & Ohio R. R. Co. *vs.* Dorsey.

The Court (GILMOR, J.,) granted all the prayers of the plaintiff. The defendants excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before MILLER, ALVEY, ROBINSON, and IRVING, J. ·

*W. Irvine Cross, Henry E. Wotton,* and *John K. Cowen,* for the appellants.

*Wm. A. Hammond,* and *Charles Marshall* for the appellee.

IRVING, J., delivered the opinion of the Court.

This is a suit for malicious prosecution, brought by the appellee against the appellants. The declaration charges, 1st. that the defendants "falsely, maliciously, and without probable cause," did cause the plaintiff to be indicted in the Criminal Court of Baltimore City, for obtaining money and valuable securities under false pretences from one James H. Buck.

2nd. That they caused him to be indicted in the same Court for forging a certain railroad ticket from Baltimore to Chicago, by the Baltimore and Ohio Railroad.

3rd. For uttering and publishing as true, a certain falsely made, altered and forged railroad ticket, from Baltimore to Chicago, issued by the Baltimore and Ohio Railroad Company.

4th. For altering a certain railroad ticket from Baltimore to Chicago, and publishing the same as true.

And that having so caused him to be indicted, without reasonable or probable cause, he was duly tried and acquitted; and by means thereof he was greatly injured in his credit and reputation.

A plea of not guilty was interposed by the defendants. Subsequently, by leave of the Court, an additional count

was added to the *narr.*, charging substantially, that on or about the 28th of December, 1880, the defendants falsely and maliciously, and without probable cause, did cause a certain search warrent to be issued, to search his office for certain forged, altered, erased and manufactured railroad tickets. To this amended declaration, not guilty was pleaded and issue was joined. Verdict and judgment being in favor of the plaintiff, the defendants appealed.

At the trial, five bills of exception were taken to the Court's rulings, but the view we take of the case will relieve us from considering any of the questions presented by the first four bills of exception. The only question which we have found it necessary to express our opinion about, arises upon the special exception of the defendants to the plaintiff's prayers, on the ground that there was no legally sufficient evidence to warrant the granting of any of his prayers so excepted to; in other words, the appellants contend they had "abundant probable cause" for their belief in the guilt of the appellee, and for their action in the premises, and that the Court should have so held and refused the instructions asked by the plaintiff for that reason.

The law controlling a case of this kind is so fully and clearly expounded by this Court in *Boyd vs. Cross*, 35 *Md.*, 197 ; *Cooper vs Utterbach*, 37 *Md.*, 318 ; *Stansbury vs. Fogle*, 37 *Md.*, 381 ; *Cecil vs. Clarke, et al.*, 17 *Md.*, 508 ; and *Metcalf vs. The Brooklyn Life Insurance Company*, 45 *Md.*, 205 ; we have only need in this case to re-affirm the principles therein announced. In substance those cases determine, that in order to enable a plaintiff to recover in a suit for malicious prosecution, he will be required, in addition to the fact that he was prosecuted and acquitted, to show that he was prosecuted at the instance of the defendants, "and that such prosecution was both malicious and without probable cause on the part of the defendants." It is also fully settled in those cases, that "the want of proba-

Thelin and Balt. & Ohio R. R. Co. *vs.* Dorsey.

ble cause is a mixed question of law and fact." "As to the existence of the facts relied on to constitute the want of probable cause, that is a question for the jury ; *but what will amount to the want of probable cause in any case, is a question of law for the Court.*" "If the evidence adduced be legally insufficient to be submitted to the jury, to prove each of the elements of the plaintiff's case," his action will "be pronounced groundless, and the defendant not be called on for his defense." *Boyd vs. Cross*, 35 *Md.*, 196. All the cases referred to adopt the definition of Judge WASHINGTON, in *Munns vs. Dupont*, 3 *Wash. C. C. Rep.*, 31, of probable cause. It is "such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing the party accused to be guilty." It is wholly immaterial whether the party was guilty or not, if the facts known to the defendant, and only known to him, were such as would warrant "a cautious man" in believing the party was guilty. To ascertain whether such was reasonable ground for defendants' action did exist, involves a careful review of all the evidence in the cause bearing upon that subject.

On the 28th of December, 1880, James H. Buck, a resident of Kansas, was in Baltimore, and desiring a first-class, unlimited ticket from Baltimore to Chicago, testifies, that he went to the appellee, who was a dealer in railroad tickets, on the morning of that day, and told him he wanted a first-class unlimited ticket to Chicago, and that the appellee handed him a ticket, saying, "that was what he wanted," for which he paid him $16.00 (the amount demanded) and left, having barely time to reach the 9.30 train which he wished to take. The ticket was over the Baltimore and Ohio Railroad. Witness says he did not particularly examine the ticket when it was given him. When the conductor came around he produced the ticket and the same was punched. He then told the conductor that he wanted to stop off at Sir John's Run. The con-

ductor told him to read his contract, and he would see he could not stop off. He followed the conductor into the sleeping car and again exhibited the ticket to the conductor, who then examined it, and said he could not receive that ticket, as the date of the limit had been erased. Buck, and Green the train agent, got off at the Relay and returned to Baltimore, where Green took Buck at once to Thelin, the auditor of the Baltimore & Ohio Railroad. Thelin was then informed by Buck and Green of *all* that occurred. Thelin on examining the ticket, said the limit had been erased, and that he thought he could discover the word December still visible. He then took Buck to the law office of the B. & O. R. R., where Buck again disclosed all the facts about the matter. Before going to see the company's counsel, Thelin had examined the records of his office, and found the order returned by the ticket agent at Chicago with his report, as his authority for selling this ticket ta a reduced rate, and that its limit was December 2d, 1880. Upon the disclosure of these facts, Sprigg, the counsel of the company, went with Thelin to the office of the State's Attorney for Baltimore City, who, upon inquiry into all the facts, said it was a case for the grand jury.

This ticket, upon which Buck started for Chicago, was originally a ticket from Chicago to Baltimore and return. The coupons from Chicago to Baltimore had been used by a passenger coming east, and taken off; and Thelin had them, but had no means of telling at what time they had been used. The ticket reads thus, "Baltimore & Ohio Railroad Company, Ohio & Chicago Division. Special return ticket. This ticket and the coupons attached entitle the bearer to one trip, on the conditions annexed, to Baltimore, Md. and return. In consideration of the reduced rate at which this ticket is sold, it will not be received for passage after ———, 187—. This ticket is not good unless each check is officially stamped and dated, *and is not good to stop-off.*" The blank we have left represents the

erasure, which Thelin knew to have been December 2d, 1880, when the right to travel on that ticket expired. *Each coupon* on the ticket contained the statement, "Void after date named in contract. *Not good to stop-off,*" and "Baltimore, Md. and return." Each coupon was at one end of it, marked "Ex. 54," meaning it was excursion 54, and the number 54 meant the form for the ticket; and stamped across the face of each coupon was "Special." Stamped on the back of each coupon was the date of the ticket's issue, "September 14th, 1880." Now, Mr. Thelin knew the plaintiff was, as he has testified that he is, a large dealer in railroad tickets. It was not natural for him to suppose the plaintiff could not have sold that ticket without seeing it was *not an unlimited ticket,* as each coupon, and the contract part of the ticket also, said "it is not good to stop-off." The ticket also, on that very day it was sold, bore discernible traces of erasure of the limit, and December even could be deciphered by the naked eye, and under glass the whole erasure was visible at a later period. He could not but suppose so large a dealer in tickets to be familiar with the forms of tickets, and knew the difference between an excursion ticket like this, bought for one-half the price of an unlimited ticket, and the form of an unlimited ticket. He could hardly think a man in that business would be utterly ignorant of the usages of railroads in respect to the tickets which he was so constantly handling. Finding such a spurious or altered ticket to have been sold by the plaintiff, it would seem as if fidelity to his employers, whose road was thereby being defrauded, would naturally prompt him to do what he first did, to go at once to the law officer of the company and lay his information before him. At that time Thelin knew of other tickets over the Baltimore and Ohio Railroad which had been found altered and tampered with, and which had before that time been *sold* by the plaintiff. One was a ticket originally reading from

Wheeling to Fairmount. This is known by the numbers 107 and 92, which are on the ticket, 107 being Wheeling and 92 being Fairmount. Fairmount was taken off and Baltimore was pasted on, so that the ticket was made to read, " *Wheeling to Baltimore.*" Baltimore is station 1. The ticket is of pasteboard thickness, a little over two inches long and an inch wide. A blue stripe on top edge and a blue stripe on the bottom. The middle stripe was white. The blue stripe on top has " Baltimore & Ohio Railroad " on it. The middle stripe has 107 (for Wheeling Station) at left end, and 92 (for Fairmount Station) at right end. In the middle is printed, in large letters, " Wheeling to," and on the blue stripe at bottom is the name of station to which the ticket takes the passenger. By some process, the bottom blue stripe, with " *Fairmount* " on it, had been taken off, and a *blue strip* of paper with " Baltimore " printed on it had been *pasted on.* No change had been made in the numbers representing the stations between which the ticket was intended to pass the holder. Fairmount was only 40 or 50 miles east of Wheeling. This ticket went through, and was not discovered to have been forged till after it was taken up. Another ticket of exactly the same character and description, originally issued to take a passenger from Wheeling to Benwood, the next station to Wheeling, and which only cost twenty-five cents, had been changed in precisely the same way, by removing " Benwood " and pasting on " Baltimore," thus making a $10 ticket out of a twenty-five cent one. This ticket had been purchased by a detective and never used on the road. That these two tickets were altered was readily perceived by passing the thumb over their face, in handling. Both the last named tickets had been purchased by a dealer named Frank from the appellee, and this fact was know by Thelin when he went to see the company's attorney. At that time also, Thelin had in his possession certain other tickets which

had been stolen from the road after they had been used and surrendered, and had been again sold. These he knew to have been in the possession of the appellee, after their larceny, and to have been sold by him. Eleven such tickets were produced at the trial, and are described in the record as the ragged edge tickets. They are very suspicious in appearance, traces on the edges of former punching being visible. They were issued from Pittsburg to Washington, over Pittsburg and Connellsville road. The coupons of that road having been taken up on it, leaving the ticket from Cumberland to Washington. Thelin knew also, from Adam Harper, that in October, 1878, he had purchased a ticket from the plaintiff, which he *saw* the plaintiff alter. That ticket was one of a line of tickets which was issued by the Baltimore and Ohio Railroad from Washington to Chicago. The ticket was altered by Dorsey, in presence of Harper, (as he told Thelin and testified in the cause) so as to take him from Baltimore to Chicago, instead of only from Washington to Chicago. The conductor on the train from Baltimore to Washington discovered the alteration and made him pay his fare to Washington, when Harper was going on it from Baltimore to Washington.

Thelin had all this information when he went to the State's Attorney, in company with Mr. Sprigg, the counsel of the road, whom he had first informed and consulted, and we think he had reasonable grounds for believing the plaintiff had, at least knowingly sold the fraudulent and altered ticket to Buck, and had good cause for consulting counsel on behalf of the road; and that the action of counsel in taking him to the State's Attorney's office was a circumstance which might also properly operate on his mind to suppose the case one for examination by the State authorities. The State's officer so regarded it, and proceeded accordingly. But it is insisted, that Thelin ought to have reported the result of the investigation under the

search-warrant to the State's Attorney, which was not done. The search-warrant was prepared by Sprigg, counsel for the road, and the affidavit upon which it issued was made by Thelin. Carter, a detective of the Company, was sent with the officer to make the search. Whether it was made before or after the visit to the State's Attorney's office is not proved. No spurious or altered tickets were found by the search. The plaintiff testified, that he told them when they came, he had sold the ticket and what he got for it. He explained, that he got it by Adams. Express, and exhibited an order that came with it, and wanted them to go to Adams Express office and see for themselves. He says Carter expressed himself satisfied, after the search was over and his statement was made, that he was innocent. Whether Carter so believed, and so reported to Thelin does not appear. What he reported is not disclosed, beyond the fact that nothing was found, which Thelin says, "later in the day," he did report. It is insisted that the explanation thus made to the officer and Carter at the execution of the search-warrant, which explanation it must be presumed Carter gave to Thelin, and the fact that no other altered tickets were found, ought to have caused the defendants to desist from further prosecution. Conceding Carter did report faithfully all these facts, collected at the search, to Thelin, of which we have no proof, beyond the fact that nothing was found, (and we do not know that this was before the visit to the State's Attorney's office,) still we cannot see that this should necessarily have modified Thelin's opinions, or changed the honest belief that the information he had, justified his entertaining, that the defendant was at least guilty to the extent of knowingly uttering the altered ticket. The question we are to determine is, were the circumstances such as justified the defendant Thelin, as a reasonably cautious man, in believing the appellee guilty in the matter; and if they were sufficient to justify belief

of any one of the charges made by the State's Attorney, the defendant Thelin had'sufficient warrant for all he did. Was it unreasonable for Thelin, knowing all he did and knowing Dorsey to be a dealer of long standing in railroad tickets, and whom he might reasonably suppose to be an expert in ticket information, and to understand their various forms, to suppose that he must have known that was not an unlimited ticket, in fact, or form; and ought to have known that the date of the limit, for which the coupons called as being in the contract, ought to be there; and the fact, that it was not there, although the company said it was, and that the holder could *not stop off*, proved the ticket a fraud? We think not. Was it *unreasonable* that he should suppose that the sale of such a ticket, with such evidence on its face, as an unlimited ticket was, at least, participation in a fraud? We cannot think so. It is a question of *bona fides*, and reasonableness of suspicion and belief and not one of guilt or innocence. If in *Boyd vs. Cross*, 35 *Md.*, 194, there was such evidence of probable cause as to justify the taking the case from the jury, there was more ground for like action in this case. Character and personal liberty are too valuable to be wantonly trifled with by reckless prosecution; and the law properly redresses the victims of such prosecution without reasonable and probable cause. But if, upon evidence of like strength, with this case, one could not, with safety, proceed against a suspected offender, there would be no security to his person, his family or property.

But the appellee further contends that Thelin had no right to consider the facts to which we have alluded, not directly connected with this charge. He insists that evidence of fradulent tickets being sold by him on other occasions ought not to have gone in, and that the Court erred in admitting evidence of such things. There has been no cross-appeal bringing that ruling for review, but inasmuch as Thelin's mind may have been influenced to

some extent thereby, and most likely was so influenced; and as an opinion is somewhat affected by that evidence, and its naturally to be expected influence on the appellants, we feel bound to express an opinion about such as we have spoken of and as was admitted. We have no doubt, that such evidence was proper. In *Bell vs. State*, 57 *Md.*, 114, this Court decided that the fraudulent utterance of other forged paper by the defendant anterior to the forgery for which he was being tried was admissible evidence for the prosecution. In *Bloomer vs. The State*, 48 *Md.*, 527, the prosecution was for the fraudulent issuance of passes on a railroad, and evidence was admitted of other like acts by same defendant. These rulings were in accordance with most approved modern decisions to which reference is made in these cases. If, therefore, such evidence is admissible on the trial before the jury on the question of guilt or innocence, *a fortiori*, such evidence, as was admitted here, must be receivable to show whether a layman in instituting a prosecution had reasonable ground and probable cause for his conduct in the premises. To sustain this view we also refer to *Thomas vs. Russell*, 9 *Exch.*, 764, and *Bacon vs. Torme, et al.*, 4 *Cush.*, 240. But it is still further pressed upon the Court, that the proceeding by search-warrant was wanton, and forms just ground for the suit, a special count for which was, by leave of the Court, introduced into the declaration. In this we cannot agree, for the same reasons we have already given in respect to the other branch of the case. With all the facts before Thelin's mind, he might most reasonably suppose that other tickets of like character might be in the appellee's possession, and no other way was open to the appellants to prevent their utterance than through such search. The failure to find any such was a fortunate thing for the appellee, but it did not show the appellants had not sufficient ground to justify them in instituting the search; and we may add the failure to find any other such tickets in the

Thelin and Balt. & Ohio R. R. Co. *vs.* Dorsey.

office of the appellee, was not necessarily sufficient to convince a reasonably prudent and cautious man that he had not fraudulently issued the ticket in question, or even might not still have others, though none were found in the place which was searched.    The fact that the appellee had been acquitted on the charge of issuing the Harper ticket could not be expected to change the view Thelin had of the transaction, for he was acquitted upon a technicality, purely, and the ticket was never produced in evidence.    In respect to the other instances there was no attempt at prosecution we are told, but the reasons for such forbearance are not disclosed.    The circumstance, however, remained to make such impression on Thelin's mind as such facts are likely to make on any person similarly informed and situated.    No circumstance connected with any of the various transactions that has been brought to our knowledge through the record, is sufficient, in our opinion, to deprive the appellants of the benefit of the reasonable intendment, that such facts are likely to produce on the mind, that a party found connected with the issuance of such a ticket, as the one giving rise to this suit, was guilty of criminal complicity in the fraud.    The fact, that the party might afterwards turn out to be wholly innocent, has nothing to do with the reasonableness of the impression made on the mind of the appellant and inducing his action.    We cannot escape the conviction, that the appellants had sufficiently probable cause for the course taken; and the sending of the case to the jury, despite the objection made to the prayers, on the ground that the evidence did not warrant leaving the question to the jury, was, of itself, sufficiently misleading to the jury to have made the verdict for plaintiff almost certain. Entertaining these views, we express no opinion in respect to the excluded testimony embraced in the other exceptions.    As we think the case should have been taken from the jury we shall reverse without a *procedendo.*

*Judgment reversed.*

(Decided 8th March, 1883.)

Thelin and Balt. & Ohio R. R. Co. *vs.* Dorsey.

ALVEY J. delivered the following dissenting opinion:

I am unable to agree with the majority of the Court in the opinion delivered in this case. Whether the verdict of the jury was right or wrong, upon the facts of the case, is not a question with which we have to deal in this Court. The case seems to me to have been fairly submitted to the jury; and that the instructions of the Court, as given at the instance of both plaintiff and defendants, were proper in themselves, and such as gave neither party cause to complain. If the verdict was found in disregard of the decided weight of the evidence, or against the instructions of the Court, or if the damages assessed were regarded as excessive, in view of the facts of the case, the remedy for such errors in the conduct of the jury was with the Court that tried the case, by the exercise of the power of granting a new trial. It is clearly not with this Court. It is only with the legal propositions involved that this Court can deal in the exercise of its power of review.

I fully appreciate the importance of so administering the law in these cases as to avoid deterring parties from being active in bringing offenders to justice. It is of the first importance to the peace and security of society, that there should be no restraints upon those who have information, from proceeding against criminal offenders, in order that they be brought to trial, and to punishment if their guilt be established. But, at the same time, it is of the utmost importance to the individual rights and liberties of the citizen, that we observe carefully and with precision the line to which a party may be justified in going in his efforts of prosecution, and beyond which he will be held liable for the violation of personal rights. The law has drawn the line with clearness and distinctness, and the Courts should always be careful that such line be not transcended.

In this case the majority of the Court hold, not that the plaintiff has failed in his proof to make out a case that

would have justified a verdict against the defendants, but that the latter have succeeded in producing proof of such facts and circumstances as establish the existence of probable cause for the prosecution that was instituted against the plaintiff; and hence there was no ground of action against them.   And this is made a question of law to be finally and conclusively passed upon by the Court, without the aid or finding of a jury.   It is from this mode of disposing of the case that I dissent.

There is no question of the right and duty of the Court to determine, *upon a given state of facts,* whether they constitute probable cause or not; but whether those facts be true or false, or whether they were, in good faith, believed to be true by the defendant at the time he made them the ground of his action, are questions of fact exclusively for the jury.

Hence the question of probable cause is a mixed question of law and of fact.   This has been regarded as the settled law ever since the leading case of *Sutton vs. Johnstone,* 1 *T. R.,* 493.   In that case it was declared, in the reasons upon which the judgment was ultimately affirmed in the House of Lords (1 *T. R.,* 545, 784), that "The question of probable cause is a mixed proposition of law and of fact.   Whether the circumstances alleged to show it probable or not probable, are true and existed, is a matter of fact; but whether, supposing them true, they amount to a probable cause, is a question of law."   And this principle has been repeated, substantially, in several decisions of our own.

If, however, the question of probable cause be dependent upon facts that have been proved beyond question or contradiction, and in regard to which there is no conflict or doubt, the Court may well pronounce upon the legal effect of such facts, and if they establish the existence of a reasonable and probable cause in the judgment of the Court, the case may be taken from the jury; as in the

cases of *Davis vs. Hardy*, 6 *Barn & Cr.*, 225, and *Boyd vs. Cross*, 35 *Md.*, 194. But in this case I do not understand such to be the state of the proof. On the contrary, the proof offered by the defendants was made up of a variety of circumstances, many of which did not relate to the immediate transaction upon which the prosecution was founded, and only had an indirect bearing, and which come to the defendants in a second-hand way. Whether these facts were well founded, or whether the defendants believed them to be true, were certainly questions of fact for the jury; for whether they were believed to be true or not, was most material as to the motive of the prosecution. *Venafra vs. Johnson*, 10 *Bing.*, 310; *Broad vs. Ham*, 5 *Bing., N. C.*, 722. In order to justify the defendants, there must have been a reasonable and probable cause, such as would operate upon the mind of a reasonable and discreet man, having reason to believe in the truth of the facts upon which he proceeded; and therefore the real questions were, upon the evidence, whether facts sufficient to constitute a reasonable and probable cause had been proved; and whether those facts were really believed to be true at the time of the prosecution by the defendants, and formed the basis of their action. These were questions of fact for the determination of the jury, and I therefore think the Court below committed no error in submitting the case to the jury upon the instructions that were given.