## CHARLES C. McTAVISH *vs.* CHARLES CARROLL.

A *declaration* in trespass, for *obstructing a right of way* used by the plaintiff. for repairing his mill-dam and race, averred the obstruction, by which he was hindered from repairing his race, and that thereby the *mill* became idle by reason of the race being out of repair, so that the water could not flow through it to the mill, "wherefore the plaintiff lost all the benefit and profit which he would otherwise have had and made from the working of said mill, and the custom and trade thereof." HELD:

That under this declaration, evidence that the plaintiff owned a large body of land around the mill, the grain raised on which he was accustomed to grind at this mill for his own use, and, in consequence of its stoppage, he had been compelled to carry his grain to another mill, at a greater distance, is *not admissible* for the *purpose* of showing the *increased cost* of such transportation, as *part of the damages* sustained.

Damages, which *necessarily* result from the injury complained of, may be shown under the *general allegation*, but where the damages, though the *natural* consequences, are *not* the *necessary* result, of the injury, they must be *particularly specified* in the declaration, or the plaintiff will not be permitted to give evidence of them.

If evidence be offered for a *particular purpose*, and it is inadmissible for *that* purpose, it is properly rejected, though admissible *generally*, or for some other object.

Where a cause of action for obstructing a right of way has once accrued, any *subsequent* offer, on the part of the defendant, to remove the obstruction, cannot deprive the plaintiff of his right to recover for damages occurring prior to such offer.

In an action for obstructing a right of way, the measure of damages is not the *reasonable cost of removing* the obstruction, but such as the jury, under all the circumstances, taking into view the *motives* of the parties, as disclosed in evidence, may think proper to allow.

A judgment will not be reversed for an omission in a prayer of the appellee, when it appears the *appellant* had the *benefit* of what was so omitted by the granting of a prayer offered by *himself*.

The plaintiff was entitled to an easement of a right of way over the defendant's land, for the purpose of repairing a mill-dam and race leading to his mill. HELD:

That an alteration made, by the plaintiff, in the race, by which it was made capable of holding and conducting a larger quantity of water, does not *destroy* the easement, but only gives a right of action to the defendant, if he sustains any injury from such alteration.

APPEAL from the Circuit Court for Howard county.

*Trespass on the Case,* brought on the 26th of August 1852, by the appellee against the appellant, for obstructing a road or

right of way over the defendant's land, from the plaintiff's mill to his mill-dam, by the side of the mill-race, which, the plaintiff alleged, he was entitled to use for the purpose of repairing said race. The declaration is fully stated in the opinion of this court. Plea, *non cul.*

The present trial was had under the *procedendo* issued by this court upon the reversal of the judgment on the former appeal, reported in 7 *Md. Rep.*, 352. The evidence in the case is sufficiently stated in the opinion of this court. In the course of the trial three exceptions were taken by the defendant to the ruling of the court below, (BREWER, J.)

*1st Exception.* This exception was taken by the defendant to the ruling of the court in admitting certain evidence offered by the plaintiff, and is fully stated in the opinion of this court.

*2nd Exception.* This exception was taken by the defendant to the ruling of the court upon the following prayers of the plaintiff:

1st. If the jury find the deeds given in evidence, and that Charles Carroll, of Carrollton, died in 1832, and that previously thereto, and while he was living, he occupied the mill and race described in the evidence, and used the north-western bank of the race as a way of approach for his hands and wagons, carts and horses, in the reparation of the banks of the race, and cleaning out and removing from the bed thereof accumulations of dirt, logs, or other obstructions to the free course of the water, from time to time, as occasion required, and that after the death of said Carroll, the plaintiff, under the deed to him, took possession of the land therein granted, with the mill, and used the race and the north-west bank thereof, to repair it and its banks in the same manner as had been previously done by said Carroll, until March 1852, and that in that, and the ensuing month, the defendant erected a post and rail fence near the edge of the race, upon and along the north-western bank thereof, and that, by the position of this fence, the plaintiff was obstructed in the use of the said accustomed way of approach for the reparation of the race and its banks, by reason of the bad condition of the race, if the jury find it was out of repair, and had a breach or breaches in its banks, and the

plaintiff was stinted in the water necessary for the mill, three weeks before the 14th of June 1852, and altogether stopped running on that day, for want of water from the causes aforesaid, then the plaintiff is entitled to recover.

2nd. If the jury find the facts stated in the plaintiff's first prayer, and that the character of the fence was afterwards changed, as stated by the witness, Ranahan, and that he delivered a verbal message to the plaintiff from the defendant, on the 29th of July 1852, that the plaintiff might take down the fence when he desired to repair the banks of his race; and shall further find, that the fence was erected by the defendant, to confine his cattle, and as a division fence of his field and meadow, and that it might have been erected on the southeastern opposite bank of the race, so as, in every respect, to have answered the objects of the defendant, without additional labor or cost, and that the plaintiff was thereby impeded and inconvenienced in the enjoyment of the exercise of his said right of way, on the north-west bank of his race, though not absolutely obstructed in the reparation of the same, then the plaintiff is entitled to recover.

3rd. If the jury find the facts stated in the plaintiff's first prayer, and also that the fence was originally a fast fence, not easily removed, and that while it was in its original condition, a breach occurred in the mill-race of the plaintiff which it was necessary to repair, and that this fence obstructed and hindered the plaintiff in the use of his right of way along the western bank of the race, in order to make such repair, and that by reason of this breach in the race, the water escaped from the same, and the plaintiff's mill was thereby compelled to stop, then the plaintiff is entitled to a verdict, even though the jury may find, that after the mill was stopped, from the cause aforesaid, the defendant caused the fence to be altered and made so that it could be easily removed, and that on the 29th of July 1852, the defendant sent word to the plaintiff, that he, the plaintiff, might remove said fence, or that he, the defendant, would have it removed whenever it might be necessary for the plaintiff to repair his said race.

The court granted the *first* and *third* prayers, but rejected

the *second,* and to the granting of these instructions the defendant excepted.

*3rd Exception.* This exception was taken by the defendant to the ruling of the court upon the following prayers offered by him:

1st. That the plaintiff will not be entitled to their verdict in this action, unless the jury shall find, that the fence complained of materially obstructed the plaintiff in the necessary repair of his dam or race; and if they shall find, that the fence did materially obstruct the plaintiff in the necessary repair of his dam or race, and that the defendant admitted the right of the plaintiff to enter upon his, the defendant's, land to repair said dam or race, and that the fence was not put up for the purpose of obstructing the plaintiff in the exercise of his right to repair said dam or race, when occasion required, and that the plaintiff did not, at any time prior to the commencement of this action, give notice to the defendant of the existence of the breach in said race, by reason of which the plaintiff claims that he has sustained damages, and require the defendant to remove said obstruction, then the proper measure of damage will be the reasonable cost of removing said obstruction, and the defendant will not be liable for any loss or damage to the plaintiff, occasioned by his failure to remove said obstruction and repair his dam or race, within a reasonable time after he discovered the same was out of repair.

2nd. That the plaintiff will not be entitled to their verdict, unless the jury shall find, that the fence, the erection of which is complained of in this action, did materially obstruct the plaintiff in the exercise of his right to enter on the defendant's land for the purpose of repairing his dam or race, provided the jury shall find, that the defendant admitted the said right of the plaintiff, and that the defendant, in making this fence, did not intend to obstruct the plaintiff in the exercise of such right.

3rd. If the jury find, that at the time of repairing the race, by the plaintiff, as testified to by the witness, Ranahan, the water in the race, in time of high water, habitually flowed over a depression in the western or lower side of the race, on

the low land of the defendant, lying between the race and the river, and that the race, at the place of such depression, was so repaired, and that, at the time of high water, the surplus water was wasted over the western or upper side of the race, on other land of the defendant, and that in consequence of said repair, the race was capable of holding and conducting to the plaintiff's mill a greater quantity of water than it could have conducted but for said repair, and that the race was in said condition at the time of erecting the fence of the defendant, as given in evidence by the witnesses, and that the plaintiff did not, at any time prior to the commencement of this action, reduce the race to its former condition, in such case the plaintiff will not be entitled to their verdict.

The court rejected the *first* and *third* prayers and granted the *second*, and to the rejection of these instructions the defendant excepted, and the verdict and judgment being in favor of the plaintiff, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Wm. H. G. Dorsey* and *Thos. S. Alexander* for the appellant argued:

1st. That the evidence admitted in the first exception was improperly admitted, because it does not show damage necessarily incident to the obstruction of the right of the plaintiff, as owner of an ancient mill, and the plaintiff does not, by his declaration, claim any damages, which he may have sustained as owner of adjacent land; it does not allege, that the plaintiff owned this adjacent land and was accustomed to carry his wheat to *this* mill to be ground; nor is there any allegation that there were no other mills in the neighborhood, as convenient to him as this. Without a *special averment* in the *nar.*, of the increased cost of transportation, as an item of damage, it cannot be recovered, and the evidence to sustain it was clearly inadmissible, for such damage is not the *natural* consequence or the *necessary* result of the act complained of, which, in this case, is simply the obstruction of the plaintiff's right of way

to repair his race and dam. 2 *Greenlf. on Ev.*, sec. 254. 1 *Chitty's Pl.*, 338. 2 *Md. Rep.*, 131, *Ellicott vs. Lamborne.* 4 *Gray*, 333, *Baldwin vs. Western Rail Road Co.*

2nd. The plaintiff's *first* prayer makes his right to recover to depend, not on the character or duration of the obstruction, nor upon the motives of the defendant, nor the purpose for which it was erected, but by the granting of this prayer, obstruction simply and technically was treated by the court as an infraction of the easement, entitling the plaintiff to substantial damages. In opposition to this instruction it is insisted, that the plaintiff, to maintain his action, was bound to show an obstruction *materially* incommoding him in the enjoyment of his easement, and that, as the easement was no more than incidental and secondary, and was to be exercised occasionally, when the exercise thereof became necessary to the enjoyment of a principal easement, the plaintiff cannot complain of any act as a legal obstruction, which is done by the owner of the soil, in the reasonable and ordinary exercise of ownership, unless he can show, that the act complained of is inconsistent with his enjoyment of his easement, or that he is thereby incommoded materially, and to an extent not necessary to the reasonable enjoyment of the proprietary right, or that it is done with the intent to deny, or to obstruct him, in the enjoyment of his easement. The decision of this court on the former appeal, in 7 *Md. Rep.*, 352, is deemed conclusive on this point, and is sustained by the authorities cited in argument there, on page 355. Again, the plaintiff's proof does not show a continuance of the obstruction over the whole space of time for which he claims damages, and it is only for the damage which he may sustain by the obstruction, and during the continuance of the obstruction, that he can recover.

3rd. The plaintiff's *third* prayer, which was granted, is also exceptionable, because it assumes, like the *first*, that a *technical* obstruction proved, entitled the plaintiff to a recovery, and because it assumes, that the right of action once existing, the plaintiff was entitled to damages down to the time of the commencement of the suit, although the character of the obstruction was, in the meantime, changed, and the plaintiff had

received notice, that it would be entirely abated whenever it might be found to interfere with his convenience.

4th. In support of the defendant's *first* prayer it is insisted, 1st, that the plaintiff should show, as indispensable to his recovery, a *material* obstruction to the enjoyment of his easement; 2nd, that where the obstruction, whilst it exists, would be material, as imposing on the plaintiff additional labor or expense; but it was not created in the denial of the right, or in order to obstruct the plaintiff in the enjoyment of his easement, then the plaintiff was bound, on the happening of the exigency, to give notice thereof to the defendant and require him to remove the obstruction, or remove it himself; and 3rd, as a corollary from the last position, that the measure of damages, where he has failed to give notice to the defendant, will be the reasonable cost of removing the obstruction, and the loss happening in the interval between the discovery of the breach and the period at which the obstruction might reasonably have been removed.

5th. The defendant's *third* prayer assumes, that if the plaintiff was entitled to the easement of a dam on the defendant's land, and of a race through the defendant's land, of certain dimensions, and drawing from the dam, for the use of his mill, certain quantities of water, and if, without consent of the defendant, he so altered his race as to draw through the same larger quantities of water than he was entitled to draw, he cannot complain of obstruction placed by the defendant in the way of his repairing or keeping up such enlarged race: It is insisted, that this prayer ought to have been granted, because such alteration and enlargement operated an extinguishment of the easement. 10 *Eng. Law & Eq. Rep.*, 417, *Renshaw vs. Bean.* 31 *Eng. C. L. Rep.*, 46, *Blanchard vs. Bridges.* 30 *Eng. C. L. Rep.*, 104, *Garritt vs. Sharp.* 8 *Exch. Rep.*, 187, *Henning vs. Burnet.*

*Chas. H. Pitts* and *G. L. Dulany* for the appellee, argued:

1st. That the court below committed no error in granting the plaintiff's *first* and *third* prayers, for in both it was fairly put to the jury, to determine upon all the evidence on both sides, whether the fence erected by the defendant was of such

a character as to be an obstruction to the plaintiff, in the exercise of his right to repair the race leading to the mill. The evidence shows, that the fence was erected in March 1852, and that the plaintiff did not receive notice, that the defendant was willing to take it away himself or permit the plaintiff to do so, until the 31st of July 1852. The court, on the former appeal in 7 *Md. Rep.*, 366, 367, decided, that the plaintiff had the *right* to this easement, and if he could show an *obstruction* of that right, he had a cause of action against the defendant. The question of right being settled, all the plaintiff had to do in this case was, to prove an *obstruction* of that right, and these prayers put that question to the jury on all the evidence in the cause. Whether that obstruction was a *material* obstruction or not is of no consequence, because the *right* being established, *any* obstruction, however slight, gave the plaintiff the clear right to come into a court of law and ask damages therefor. But if there is any thing of importance in the word "*material*," the defendant had full advantage of it, by the granting of his *second* prayer.

2nd. The defendant's *first* prayer admitting that the fence was a material obstruction to the plaintiff's right of repairing this race, yet insists, that he can only recover damages *equal* to the *cost* of removing the obstruction, no matter what his direct actual damages may have been, unless he had, previous to bringing the action, given notice to the defendant of the breach in the race, and required him to remove the fence which occasioned the obstruction to the reparation thereof. It is insisted, that no such notice was necessary, 1st, because the defendant knew, and must be presumed to have known and contemplated, the consequence of his own act in erecting the fence, 2nd, because the plaintiff did give all the notice which could be required, by his letter to the defendant of the 26th of March 1852, warning him against the erection of the fence, and the obstruction it would occasion to the plaintiff's right of passage to and from the race, and 3rd, because in actions sounding *in tort*, the question of damages has ever been regarded in Maryland as belonging to the jury.

3rd, That there was *no evidence* upon which to base the

instruction asked for in the defendant's *third* prayer, and it was, therefore, properly rejected. But this prayer is also erroneous for other reasons. It does not leave it to the jury to find, whether the easement, as actually used, was essentially different from that which the plaintiff was entitled to, and whether the difference, if any, was beneficial to the plaintiff, and injurious to the defendant. Again, the *law* of the prayer is not correct, even if there was evidence to sustain it, for such alteration of the race, if proved, would not *destroy* the easement, but only give a right of action to the defendant if he has sustained any injury thereby. To work a *destruction* of the easement it must be *essentially altered*. 30 *Eng. C. L. Rep.*, 104, *Garritt vs. Sharp.* 31 *Eng. C. L. Rep.*, 51, *Blanchard vs. Bridges.*

4th. That the evidence offered in the *first* exception was properly admitted. The declaration contains sufficient averments to let the proof in. It alleges, that by the obstruction in question, the plaintiff was deprived of the use of the way, and was prevented from repairing his race, *"whereby* the said mill became and was during all that time aforesaid, *idle,* and *incapable* of being worked, *wherefore* the plaintiff lost all the *benefit and profit, which otherwise he would have had and made* from the working of said mill and the *custom and trade thereof."* In this respect the allegations are entirely different from those in the case of *Ellicott vs. Lamborne,* cited by the appellant, and the present case is in every respect entirely *unlike* that.

*Note. Mr. Dulany* further argued, on this point, that under the decision in *Pegg vs. Warford,* 7 *Md. Rep.,* 582, the evidence was admissible.

Le Grand, C. J., delivered the opinion of this court.

This case is, for the second time, before this court. The result of the former appeal will be found in 7 *Md. Rep.,* 352. As now presented it rests on three exceptions, the first to the admission of evidence offered by the plaintiff, the second, to the instructions of the court below, given at the instance of the plaintiff, and the third, to the rejection of the prayers offered on the part of the defendant.

The first exception sets out the title of the plaintiff to the land, on which is erected an ancient mill, with the privilege of supplying that mill with water, by means of a dam erected on, and a race through, the land of defendant. It shows the erection by defendant of a post and rail fence, along side the race, and across a road which the plaintiff had been accustomed to use in repairing the dam and race; that the fence was an obstruction to the plaintiff in his work of repair, and that shortly after the erection of the fence, the race got out of order and required repair, and that the breaches increased so much by the 14th June 1852, that the mill was then stopped for want of water, and since ceased to be used. The plaintiff then offered to prove, that he was "the owner of a large body of land around said mill, and that he was accustomed to grind his grain, raised on said land, at said mill, for his cattle and horses, as well as for the use of his hands and family, and that, in consequence of the stoppage of said mill, he had been compelled to carry his grain to another mill, at a greater distance; and he offered to show the cost of such increased transportation, as a part of the damages sustained by him." To the admissibility of which evidence the defendant objected, for that purpose, but the court overruled the objection and admitted the evidence to go to the jury. It will be observed, that the objection to the admissibility of the evidence, is not to it for *any* purpose, but "for *that* purpose." The inquiry then is, what is *that* purpose? The offer answers the question; the increased *cost* of *transportation* "as *part* of the *damages.*" The objection does not extend to the other elements of the offer, but is confined to the increased cost of transportation, being shown as a part of the damages, and whether or not it was admissible for the purpose for which it was offered, depends upon the character of the plaintiff's declaration. The language of the declaration, which states the damage complained of, is as follows: "Whereby the said road or way there, was, during all that time, stopped and obstructed, and the said plaintiff and his servants could not, during all or any part of that time, pass or repass, on foot, with horses, carts, oxen and wagons, from the said mill, along the banks of said race, to

McTavish *vs.* Carroll.

dig out and repair the banks thereof, from the said mill to the said dam, over the close of the said defendant, and from the said dam back again to the said mill, as occasion required, as they ought to have done; and the said plaintiff, during all that time, was deprived of the use, benefit and advantage, of the said way, and was prevented and hindered from repairing or amending said race and the banks thereof, whereby the said mill became and was, during all that time aforesaid, idle and incapable of being worked, by reason of the said race, and its banks, being broken down and out of repair, so that the water could not flow through it from the said dam to the mill.— *Wherefore the plaintiff lost all the benefit and profit, which otherwise he would have had and made from the working of said mill, and the custom and trade thereof.*"

The elementary books, as well as decided cases, are full of disquisitions on the necessity of declaring specially, when special damages are sought to be recovered, but it is not infrequently difficult to draw precisely the line, between what is technically *general* and *special* damage. Perhaps this has been as well done by Professor Greenleaf, as by any other writer. He, in the 2nd vol. of his treatise on the law of evidence, section 254, thus states the rule:—"All damage must be *the result* of the injury complained of; whether it consist in the withholding of a legal right, or a breach of a duty legally due to the plaintiff. Those which *necessarily* result, are termed *general damages*, being shown under the *ad damnum*, or general allegation of damages, at the end of the declaration; for the defendant must be presumed to be aware of the necessary consequences of his conduct, and therefore cannot be taken by surprise in the proof of them. Some damages are always presumed to follow from the violation of any right, or duty, implied by law; and therefore the law will, in such cases, award *nominal* damages, if none greater are proved. But where the damages, though the *natural* consequences of the act complained of, are *not* the *necessary* result of it, they are termed *special damages*, which the law does not imply; and therefore, in order to prevent a surprise upon the defendant, they must be particularly specified in the declaration, or the plain-

tiff will not be permitted to give evidence of them at the trial. But where the special damage is properly alleged, and is the natural consequence of the wrongful act, the jury may infer it from the principal fact.'' This analysis of the law, in this regard, is fully sustained by the authorities referred to by the writer, and also by this court in the case of *Ellicott vs. Lamborne,* 2 *Md. Rep.,* 131.

So much for the principle. The loss complained of is, ''the benefit and profit which otherwise he would have had and made from the working of the mill, and the custom and trade thereof.'' Now although the cost of increased transportation, in the *particular* case, may have been the *natural,* yet it was not the inevitable or *necessary* consequence of the acts of the defendant complained of, and if it were not the latter, no proof could be given of it without its having been alleged in the declaration. There may have been fifty, or more, mills more convenient to the plaintiff than the one whose working was interfered with, and their use would not have increased the cost of transportation, and, if such were the case, then the cost of transportation could not have been the *necessary* consequence of the act complained of. If, as was doubtless the fact, the mill in question was the most convenient for the use of the plaintiff, and its being rendered useless forced him to go elsewhere, at a greater cost of transportation, his declaration should have so alleged. Under *this declaration* he is only entitled to recover, as general damages, the value of the use of the mill of which he was deprived. After what we have said, it must be manifest we do not agree with the senior counsel for the appellee, in his understanding of what was decided in the case of *Pegg vs. Warfield,* 7 *Md. Rep.,* 582. That case, to our apprehension, conclusively settles the question in this exception, in opposition to his views; it was decided, that if evidence, which is the present case, be offered for a *particular* purpose, be inadmissible for *that* purpose, it is properly rejected, though admissible generally, or for some other object.

The second and third exceptions relate to the ruling of the court, in regard to the prayers offered by the plaintiff and the defendant. In addition to the evidence contained in the first

McTavish *vs.* Carroll.

exception, testimony was given to show the original condition of the fence erected across the way the plaintiff had been accustomed to travel, to make repair of the dam and race; that it was constructed so as to be moved with facility, and that after it had been erected for some time, the defendant caused his manager to take the rails out and have them made looser, but this *was after the breach in the race had first occurred.* Besides this testimony, it was shown in proof by defendant, that he told his manager, who was going to the house of the plaintiff, to inform him, that he, the plaintiff, was at liberty to remove the fence whenever he found occasion to repair his race or dam, or if he would not, that the defendant's manager would, at any time the plaintiff might require, remove the obstructions for that purpose, and that the said manager did, on that day, so inform the plaintiff. The defendant also gave evidence, that in the embankment, at a short distance below the dam, there was a depression on the embankment, over which the water flowed out of the race; that the plaintiff repaired this place, so that there is no longer any waste of water there, and at high water the water flows back and forward.

When this case was heretofore under consideration, this court, as clearly as it could, defined the right of the plaintiff to pass over the road for the purpose of repairs, and it is not necessary what was then said should be now repeated; suffice it to say, the right is unquestionable.

We think the court properly granted the first and third prayers of the plaintiff, and rejected the first prayer of the defendant. The first and third prayers of the plaintiff are based upon the hypothesis, that the damage complained of, because of the obstructions interposed by the defendant, occurred (if the jury should find the fact) *before* the 14th day of June 1852, and before the 29th of July 1852, the time when the defendant's message was delivered to the plaintiff, and claims the right to recover for *such* damage, notwithstanding such subsequent message. If the jury found the facts set out in those prayers, the friendly message of the 29th of July could not do away with any cause of action which had already accrued.

The *materiality* of the obstruction was placed before the

56      v. 13.

jury in the granting of the defendant's second prayer, and, therefore, its omission in the plaintiff's prayers is no sufficient cause of complaint to justify a reversal on that account.

The first prayer of the defendant defeats the plaintiff's right of recovery, if the jury should believe that the fence did not materially obstruct the plaintiff in the necessary repair of his dam or race. Whatever benefit the granting of this part of the prayer would have been to the defendant, he had by the granting of his second prayer, and therefore he has no right to complain. But the prayer is defective in other particulars. It defines the measure of damages to be *the reasonable cost of removing the obstructions*, if the jury should believe that the plaintiff did not, at any time prior to the commencement of this action, give notice to the defendant of the existence of the breach in said race, (by reason of which the plaintiff claims that he sustained damage,) and require the defendant to remove the obstruction. We think the proper measure of damages is such, as the jury, under all the circumstances, taking into view the motives of the parties, as disclosed in evidence, should think proper to allow. We know of no other standard.

The court are of opinion that the defendant's third prayer was properly rejected, because there was no evidence to sustain it. But, inasmuch as this case is to go back under a *procedendo*, a majority of the court think that the question of law involved in the prayer ought to be decided, for sufficient evidence may be adduced at the new trial. One of the judges who sat in this case does not feel himself called upon to pronounce any opinion on the point, whilst the others are of opinion, that the alteration in the banks of the race, if any such was made, did not destroy the right of easement of the plaintiff; it merely gave a right of action to the defendant, if he sustained any injury from such alteration.

*Judgment reversed and procedendo awarded.*
(Decided May 31st, 1859.)