# THE MONEYWEIGHT SCALE COMPANY *vs.* NELSON F. McCORMICK.

*Malicious Prosecution — Sufficiency of Evidence — Probable Cause—Malice—Advice of Counsel—Embezzlement—Failure to Pay Over Money Collected—Evidence—Appeal—Harmless Errors.*

In an action of malicious prosecution plaintiff's evidence showed that he was a sales agent of the defendant company and as such had collected for it sums of money, a part of which he did not pay over; that he communicated this fact to an agent of the defendant and said that the amount due would be paid from commissions to be earned by plaintiff, to which the agent did not object, and plaintiff continued to act as sales agent; that afterwards the defendant refused to render plaintiff a statement of the commissions he was entitled to receive; that the defendant caused plaintiff to be arrested and indicted for embezzlement, but did not tell the State's Attorney that plaintiff claimed that the defendant owed him certain commissions, and that the trial of the indictment resulted in the acquittal of the plaintiff. *Held,* that this evidence is legally sufficient to entitle plaintiff to recover, if found to be true by the jury, since it tends to show that the plaintiff's failure to pay over all the money collected by him was not with intent to defraud the defendant; that defendant knew that fact, and that plaintiff was not guilty of the crime charged.

In such action, evidence is admissible to show the nature and extent of the plaintiff's claim against the defendant and the manner in which the defendant had treated plaintiff's use of money collected by him and not paid over.

In an action of malicious prosecution, while malice may be presumed from the want of probable cause, such presumption may be rebutted by proof of the circumstances under which defendant acted, such as that, after full disclosure of all the

facts to counsel, he acted in good faith upon the advice of counsel, and in the honest belief that the accusation made was well founded.

The absence of probable cause cannot be presumed from the fact that the defendant acted maliciously, and the plaintiff is not entitled to recover unless it be shown that the defendant acted without probable cause.

When the evidence in an action of malicious prosecution shows that the prosecution was begun by the express authority of the defendant, and that plaintiff was acquitted, it is proper to instruct the jury that if the arrest and prosecution of the plaintiff was procured under such circumstances as would not have induced a reasonable and dispassionate man to believe that the plaintiff was guilty of the charge against him, then there was no probable cause for the prosecution, and the jury may infer, in the absence of proof to the contrary, that the prosecution was malicious in law, and their verdict may be for the plaintiff.

When the defendant company, at the time of instituting the prosecution of the plaintiff for embezzlement in not paying over money collected by him, did not state to the State's Attorney's office that the plaintiff claimed to be entitled to certain commissions from the defendant, and that defendant had failed to comply with plaintiff's demand for a statement of account, the defendant is not entitled to have the jury instructed that, if before suing out the warrant for the arrest of the plaintiff, the defendant had placed the entire matter before the State's Attorney's office and was by it advised to swear out the warrant, then the verdict must be for the defendant.

The mere fact that an agent fails to pay over money collected by him does not constitute probable cause for procuring his arrest on the charge of embezzlement.

Whether there was probable cause for the prosecution of a party does not depend upon whether he was guilty or not of the crime charged.

When the defendant caused plaintiff to be arrested for embezzlement, the fact that the defendant charged the money embez-

zled against the plaintiff as a debt does not negative the existence of probable cause.

The question as to the existence of probable cause for a prosecution depends upon whether or not all of the facts of the case are such as would have justified a cautious man in believing that the accused was guilty.

Evidence that plaintiff's counsel had stated in a conversation that there was not a jury in the country that would decide in a certain way, is immaterial, and cannot be complained of by the appellant as constituting reversible error.

When evidence has been admitted subject to exception, the appellant cannot avail himself of the exception on appeal unless there was a subsequent motion to strike out the evidence.

In an action for malicious prosecution, when the declaration does not allege special damage, the plaintiff should not be allowed to testify that he was not able to do as much work after his imprisonment as before, could not sleep, etc. But the admission of such evidence is not reversible error when not followed up by other evidence of a similar character, when the imprisonment of the plaintiff was only from Saturday evening to the following Monday, and when the verdict of the jury was for a small amount and they had been properly instructed as to the measure of damages.

*Decided January 12th, 1909.*

Appeal from the Superior Court of Baltimore (NILES, J.).

*Plaintiff's 1st Prayer as Modified.*—If the jury shall find from the evidence that the plaintiff was arrested and imprisoned, as set forth in the police records of Baltimore City, read in evidence, and afterwards was indicted, tried and acquitted in the Criminal Court of Baltimore City on the charge of embezzlement, as set forth in the records of that Court and the docket entries and original papers therein, read in evidence, and shall find that the defendants, Howard C. Shimer, James O. Winsted and Isaiah P. Blackburn, and the

defendant, The Moneyweight Scale Company, a corporation organized under the laws of the State of Illinois, by its officers, agents, attorneys and servants, acting within the scope of their employment by said defendant corporation, or acting by the authority of the said defendant corporation, expressly given for such act, aided and assisted in procuring the arrest and prosecution of the plaintiff under such circumstances as would not have induced a reasonable and dispassionate man to have believed the plaintiff guilty of the charge made against him; or if the jury shall find that defendant corporation ratified and adopted said action of its officers, agents, attorneys and servants, after said officers, agents, attorneys and servants had aided and assisted in procuring said arrest and prosecution of the plaintiff under such circumstances as would not have induced a reasonable and dispassionate man to have believed the plaintiff guilty of the offense so charged, then there was no probable cause for said prosecution, and the jury may infer, in the absence of surficient proof to satisfy them to the contrary, that said prosecution was malicious in law, and their verdict may be for the plaintiff. (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the jury shall find from the evidence that the plaintiff was arrested and imprisoned, as set forth in the police records of Baltimore City, read in evidence, and afterwards was indicted, tried and acquitted in the Criminal Court of Baltimore City on the charge of embezzlement, as set forth in the records of that Court and the docket entries and original papers therein, read in evidence, and shall find that the defendant, Isaiah P. Blackburn, was the agent of the defendant corporation, the Moneyweight Scale Company, and that the scope of his employment as such agent included the collection of debts due said corporation, with full authority as to the mode of procedure to be employed for that purpose and to employ counsel for that purpose, and shall find that said Isaiah P. Blackburn did employ the defendant, Howard C. Shimer, in the criminal prose-

cution of the plaintiff, if they find said criminal prosecution; and shall find that said defendants, Blackburn and Shimer, aided and assisted in procuring the arrest and prosecution of the plaintiff, and the said defendant, James O. Winsted, aided and assisted therein, for the purpose of collecting an alleged indebtedness due by the plaintiff to the defendant corporation, or for any other object than the vindication of public justice, under such circumstances as would not have induced a reasonable and dispassionate man to have undertaken such prosecution for public motives, then said prosecution was malicious in law, and if the jury shall also find lack of probable cause, as defined in defendants' fifth prayer, their verdict may be for the plaintiff. (*Granted.*)

*Plaintiff's 3rd Prayer.*—If the jury shall find a verdict for the plaintiff, they are at liberty to take into consideration all the circumstances of the case and award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained in consequence of the wrongful acts of the defendants, but may also award exemplary or punitive damages as a punishment to the defendants for such wrongful acts. (*Granted.*)

*Defendants' 8th Prayer as Modified.*—If the jury find from the evidence that the defendants consulted the State's Attorney's office of Baltimore City before swearing out the warrant for the arrest of the plaintiff, and that they placed the entire matter before the State's Attorney's office, and that they were advised by the State's Attorney's office to swear out the warrant for the arrest of the plaintiff, they are at liberty to consider these facts in deciding whether or not the defendants are chargeable with malice. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and HENRY, JJ.

*H. Carhart Shimer,* for the appellant.

*Andrew C. Trippe* (with whom was *James McC. Trippe* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This is an action for malicious prosecution and for false imprisonment (which was tried as for malicious prosecution), by the appellee, Nelson F. McCormick, against the appellant, the Moneyweight Scale Company, a corporation of the State of Illinois, and Howard C. Shimer, James O. Winstead and I. T. Blackburn. The trial below resulted in a verdict and judgment in favor of the appellee against the appellant for $425.00, and a verdict and judgment in favor of the other defendants, and it is from the judgment against the appellant that this appeal is taken. The record contains ten bills of exception, the first nine of which are to the rulings of the Court on the evidence, and the tenth to the action of the Court on the prayers. As the defendants by their first prayer, which was rejected, asked the Court to instruct the jury that the plaintiff had offered no evidence legally sufficient to entitle him to recover, it will be necessary to examine the evidence at some length.

It appears from the testimony of the appellee that the appellant was engaged in the business of selling scales, and that he was employed by the appellant from February, 1902, to February, 1906, as its "salesman and collector" in Baltimore City. That after the fire in Baltimore, in 1904, business was very dull, and that in order to get business it was necessary for him to have a team to take around his samples and to deliver the goods, and that he used some of the collections he had made, and which had not been turned into the appellant company, for the purpose of securing the team. That in the latter part of 1904 he met Mr. Winstead, General Manager of the appellant for the Eastern States, including Baltimore City, whose office was in Philadelphia, and Mr. Klein, one of the officials of the appellant, at the Hotel Shirley, in Baltimore, and that Mr. Winstead wanted him to go to Philadelphia and act as collector for the company there. That in April, 1905, Mr. Winstead again asked him to go to Philadelphia, and that the appellee then told him that he had used some of the collections for the purpose of securing the team,

and that he wanted to straighten up before he made any changes; and that that was the reason he had not consented to go to Philadelphia when he first asked him to go; that Mr. Winstead then asked him how much he had so used, and that he told him, and that Mr. Winstead then asked him how his collections were, and he told him they were fairly good, and that Mr. Winstead then told him to use the collections he had to pay up those he had not turned in to the appellant, and to go ahead and "use the best efforts" he could to get business and that he would see him through, and that he did just as Mr. Winstead told him to do. That when Mr. Winstead was in Baltimore, he and the appellee used the team together in making sales and collections for the appellant. That in October, 1905, Mr. Winstead wrote him, expressing the hope that he would continue to get "nice business," as "I am desirous that you have the success that you so much deserve," and, on October 23, 1905, wrote him again, urging him to come to Philadelphia, and stating that there was no business in Baltimore, and that the sooner he got to Philadelphia the better it would be for him, and requesting him to box up the scales he had in his possession and ship them to Philadelphia. That he went to Philadelphia to work for the appellant some time in November, 1905, and that shortly after he got there, about the first of December, he had a talk with Mr. Winstead and Mr. Blackburn, a representative of the appellant, in regard to the amounts he had collected and used, and gave them an account of it; that they wanted him to settle the amount at once, but he told them that he "was not in a position to settle just then;" that Mr. Blackburn wanted him to get his brother to fix it up for him, and that he told him that he did not care to do that; that he, appellee, had some money in the hands of Mr. Winstead, and that he would like to have some time to pay what he had used, and that they finally agreed to let him keep on as he had been, "and pay it along out of his commissions." That a short time after this conversation, on December 13th, he was injured by a trolley car, and was laid

up for about ten weeks, and that after he got out again Mr. Winstead advised him to go back to Baltimore. That he returned to Baltimore, and after he had been working there about a week Mr. Winstead and the appellant refused to furnish him with any more samples.

After the appellee was discharged, in February, 1906, the appellant wrote appellee's brother that after appellant had discovered the shortage of the appellee the appellant had agreed that the appellee could liquidate it in the way of commissions, but that appellee had failed to do this, and urging his brother to take some steps towards having it paid. To this letter appellee's brother replied that he believed the appellee to be honest, and that if the appellant would allow the appellee to continue his work he was certain he would pay every dollar he owed; that he had spoken to the appellee about the matter, and that he said that while he owed the appellant about $170.00, he had an open account against the appellant, and requested the appellant to send him an itemized account, in order that he could know how the appellee stood. On April 4, 1906, appellant wrote appellee's brother in reply that they would be glad to accommodate him with an itemized statement of appellee's account, but that that would involve a large amount of work, and that they could not just then furnish it. That they were very glad to quote the present balance, so that he could know the general shape his account was in. That their commission account with him to that date showed him indebted to the appellant to the amount of $271.40, against which there were credits of a conditional nature in favor of the appellee, in the form of prospective commissions, to the amount of $342.00, and that in addition to the $342.00, there was a further sum of $62.50 in possible commissions, but that the several amounts making up the $62.50 were in dispute, and the payment of the same quite doubtful. In this letter the appellant requested appellee's brother to notify the appellee that the appellant had a perfect right to resort to extreme measures if the matter was not adjusted, and that he could not expect the appellant to withhold such action much longer. On

the 11th of April, 1906, the appellant wrote the appellee as follows: "This is to give you notice that on Saturday, April 21st, we are going to forward our claim against you to our Baltimore attorney and direct him to institute immediate action. * * * We shall not engage in this action in any vindictive or revengeful spirit, but merely for the purpose of enforcing a proper adjustment, etc."

Appellee further testified that at the time he was discharged he owed the appellant about $168.00, and that in addition to his commissions on sales made by him, which the appellant had refused to render him an account of, he was entitled to commissions on the sales of twenty-two scales, made by him and Mr. Winstead in Baltimore with the understanding that they would divide commissions. Some time after the appellant's letter to the appellee, of April 11th, appellee received a note from Mr. Shimer, counsel for the appellant, asking him to call at his office on business of importance, and appellee states that when he went to Mr. Shimer's office Mr. Shimer told him that he had appellant's account against him for $300.00, which he wanted him to settle at once. That he told Mr. Shimer that it was not $300.00, but $168.00, and that he was ready and willing to settle with the appellant if the appellant would render him a statement, and it appeared from the statement that he owed the appellant anything; that Mr. Shimer said to him that Mr. Blackburn would be in Baltimore in a few days and if it was not settled before he came he would make trouble for him, and that when he asked him what he meant by trouble, Mr. Shimer said that he would have him arrested. That appellee and his counsel later on had another interview with Mr. Shimer, when Mr. Winstead and Mr. Blackburn were present, and that at that interview he again demanded a statement from the appellant of his commissions, which they refused to give him.

The testimony of Mr. Winstead, Mr. Blackburn and Mr. Shimer is to the effect that the appellee admitted to Mr. Winstead in May, 1905, that he was short in his accounts to the extent of about $100.00; that he was at that time in great dis-

tress of mind for fear that the appellant would find it out; that Mr. Winstead, after thinking the matter over, agreed to let him continue his work of selling and collecting for the appellant, and to work with him; that Mr. Winstead subsequently found that appellee was short about $300.00, instead of $100.00, and that he and Mr. Blackburn had a talk with the appellee in Philadelphia, in which conversation appellee was told that his shortage amounted to $300.00; that the appellee disputed the correctness of that amount, and signed a statement admitting items which he had collected amounting to $169.00, and also another statement of items amounting to $91.50, which he claimed to have accounted for to the former general manager of the appellant. That Mr. Winstead consulted Mr. Shimer, counsel for the appellant, in regard to the claim against the appellee, and that afterwards he, Mr. Blackburn, and Mr. Shimer went to the State's Attorney's office in Baltimore City, and consulted Mr. O'Dunne, and that, acting upon the advice of counsel and of the State's Attorney, the prosecution was begun by direction of the appellant; that in consulting Mr. O'Dunne they did not tell him that the appellee claimed that the appellant owed him commissions and had refused to render him a statement.

The agreement of counsel, made a part of the record, shows that the appellee was arrested on the 29th of September, 1906, on a warrant sworn out by Mr. Shimer, "acting by express authority" of the appellant, "charging him with violating Article 27, Sec. 103, of the Code of Public General Laws of the State of Maryland, and with the embezzlement of $169.00, current money, belonging to the Moneyweight Scale Company;" that the appellee on the testimony of Mr. Shimer, acting for the appellant, was committed to the Baltimore City Jail for the action of the Grand Jury for Baltimore City, and upon the testimony of said Shimer was indicted by the Grand Jury, and tried in the Criminal Court of Baltimore City upon said charge; that the appellant "aided and assisted in the prosecution of said trial," which resulted in the acquittal of the appellee.

To entitle the plaintiff to recover in an action for malicious prosecution, he must show that he was prosecuted by the defendant for an alleged criminal offense; that the charge was false and malicious, and without probable cause, and that the prosecution was finally determined by an abandonment or a dismissal of the charge, or the acquittal of the accused. His failure to establish any one of these essential elements will be fatal to his right of recovery. The falsity of the charge may be shown by the trial and acquittal of the plaintiff, but such evidence is not conclusive, and the defendant may show that, notwithstanding his acquittal, the plaintiff is guilty of the offense for which he was prosecuted. The malice which is required to be shown is the wrongful motive that prompted the prosecution, and may be established by proof of any motive other than that of bringing a guilty party to justice. While malice may be presumed from the want of probable cause, such presumption may be rebutted by proof of the circumstances under which the defendant acted, for instance, that he consulted counsel, and that, after a full and frank disclosure of all facts known to him, or which, by the exercise of reasonable diligence, he could have ascertained, he in *good faith,* and in the honest belief that the accusation was well founded, acted upon the advice of his counsel. Probable cause, the absence of which warrants the presumption of malice, is said to be "such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing the party accused to be guilty." The absence of probable cause cannot be presumed from the fact that the defendant acted maliciously, and unless the plaintiff shows that the defendant acted without probable cause he cannot recover. 1 *Poe's P. & P.,* secs. 192-197 (3rd Ed.) ; *Turner* v. *Walker,* 3 G. & J. 377; *Cecil* v. *Clark,* 17 Md. 508; *Boyd* v. *Cross,* 35 Md. 196; *Straus* v. *Young,* 36 Md. 246; *Cooper* v. *Utterback,* 37 Md. 282; *Stansbury* v. *Fogle,* 37 Md. 369; *Thelin* v. *Dorsey,* 59 Md. 539; *Hyde* v. *Greuch,* 62 Md. 577; *Torsch* v. *Dell,* 88 Md. 459; 26 *Cyc.* 49, note 58.

The plaintiff was charged with having fradulently embez-

zled $169.00, current money, belonging to the appellant, and in support of such charge, it was necessary to show that he received and failed to pay the money with *intent to defraud* the appellant. 15 *Cyc.*, p. 491 and p. 533, note 64. In the case of *McElroy* v. *People,* 66 N. E. Rep. 1058, where the prisoner had been tried and convicted of the crime of embezzlement, the Supreme Court of Illinois said: "We are also of the opinion that the evidence failed to prove with that degree of certainty required by the rules of evidence in criminal cases that the defendant fraudulently converted to her own use, or took and secreted with intent so to do, without the consent of her employer, the money in question. The only evidence of a criminal intent is the inference to be drawn from the act itself. She at no time denied or attempted to conceal the indebtedness. In answer to the letters of Hubbard she went several times to his office for an accounting, and explained to him how she came to use the money, promising to pay it as soon as she could mortgage some property, or otherwise procure the amount. He caused her arrest, and then directed the officer to let her go upon her promise to raise the money within a given time. Two months later he again had her arrested, because, as he said, she had not lived up to her agreement in regard to paying the money. While she was not justifiable in using money belonging to her employer, it does not follow that she was guilty of the crime of embezzlement. The criminal law cannot be properly used by individuals to enforce the payment of debts, and that seems to have been the motive of the prosecuting witness in putting this prosecution upon foot."

We think it clear from the above recital of the evidence, that there was sufficient evidence in the case, if believed by the jury, to justify a finding, not only that the appellee was innocent of the crime for which he was prosecuted, but that the appellant *knew* that he did not intend to *defraud* it, and that, instead of acting in good faith upon the advice of counsel and the State's Attorney to whom it had made a full and frank disclosure of all the facts and circumstances within its knowl-

edge, and in the honest belief in the guilt of the accused, the appellant wrongfully resorted to the prosecution of the appellee for the purpose of enforcing the payment of a debt, which he had refused to pay because of its refusal to render him an account of the commissions he was entitled to receive, and that therefore the defendants' first prayer was properly rejected.

We find no objection to the plaintiff's first and second prayers as modified, and plaintiff's third prayer, which were granted by the Court below. The evidence shows that the prosecution was begun by the express authority of the appellant, and, so far as the appellant is concerned, they substantially conform to the instructions approved by this Court in *Torsch* v. *Dell, supra.* There was no reversible error in the refusal of the Court to grant the defendants' second, eighth, ninth, tenth and twelfth prayers. So far as they contain instructions to which the appellant was entitled, they are covered by defendants' third, fifth and modified eighth, ninth and tenth prayers, granted by the Court. As we have seen, the undisputed evidence in the case is that the agents of the appellant did not place "the entire matter before the State's Attorney's office," and defendants' eighth prayer was for that reason, without regard to other defects, properly rejected.

Defendants asked the Court, by their fourth prayer, to instruct the jury that if they found that the plaintiff collected funds belonging to the appellant and failed to account for the the same, and that he appropriated said funds to his own use, then their verdict should be for the defendants; and, by their sixth prayer, that if the jury believed from the evidence that the plaintiff collected money belonging to the appellant and failed to account for the same to the appellant or its duly authorized representatives, "as set forth in the warrant," then the appellant had probable cause for procuring the arrest of the plaintiff on the charge of embezzlement, and their verdict should be for the defendants. These prayers were rejected, and the Court, by the modified sixth prayer, instructed the jury that the uncontradicted evidence in the case showed that the plaintiff collected moneys belonging to the defendant com-

pany and failed to account for the same, and that the defend-
ants had probable cause for procuring the arrest of the plain-
tiff on the charge of embezzlement, and that they should find
for the defendants, unless they further found "that the duly
authorized agents of the said defendant, with substantially the
same knowledge as to the receipt of said defendant's money
without accounting therefor, as was possessed by the defend-
ants when the warrant mentioned in the case was sworn out,
agreed with the plaintiff that whatever shortages were found
to exist in his account with said defendant corporation should
be charged against the plaintiff as an ordinary debt." It ap-
pears from the agreement of counsel, already referred to, that
the warrant sworn out by Mr. Shimer charged the appellee
with the fraudulent embezzlement of $169.00 belonging to the
appellant, and if the instruction granted by the Court could be
construed to mean that notwithstanding the jury found that
the plaintiff was guilty of the charge contained in the war-
rant, yet if they further found that the appellant agreed that
the money embezzled by him should be charged against him as
a debt, then their verdict should be for the defendants, it would
be clearly wrong, for while the question of probable cause does
not depend upon the guilt or innocence of the accused, if he
was in fact guilty, no subsequent agreement could have
changed the character of his act, so as to enable him to main-
tain an action for malicious prosecution. On the other hand,
he may be innocent, and yet there may have been probable
cause for his prosecution, and where there is probable cause
there can be no recovery, however malicious the prosecution.
As we have said, to sustain the action there must be both mal-
ice and a want of probable cause. Moreover, a party has
a right to recover as a debt money obtained from him by fraud
or embezzlement, and the fact that he charged the money so
obtained against the accused as a debt, where probable cause
is shown to have existed, would not of itself negative the ex-
istence of probable cause. 1 *Poe's P. & P.,* Sec. 194; 26 *Cyc.,*
pp. 26 and 37; *Fagin* v. *Knox,* 66 N. Y. Rep. 525. In the
case of *Rankin* v. *Crane,* 104 Mich. 6, the Court said, that

probable cause "being established, the motive of the prosecutor is immaterial, and the fact that the defendants offered to refrain from criminal prosecution if the plaintiff would repay the money he had misappropriated, is not sufficient to establish want of probable cause."

The question of probable cause does, however, depend upon whether or not *all* of the facts and circumstances were such as justified the belief of a cautious man in the guilt of the accused, and if the fact that a party received and failed to account for money, when taken in connection with all other facts and circumstances known to the prosecutor, were not such as warranted the belief of a prudent man in the guilt of the accused, and he therefore treated the money so received and not accounted for as an *ordinary* debt, there was not probable cause.

By the fifth prayer the jury were properly instructed as to what facts constituted probable cause, and were told that if they found that there was probable cause the plaintiff could not recover, and what the learned Court meant by the modified sixth prayer was, that while the fact that the plaintiff received and failed to account for the money belonging to the appellant, *standing alone,* was sufficient to justify the belief of the defendants in his guilt, if they found that when taken in connection with all other facts and circumstances known to the defendants at the time of the prosecution, it did not justify their belief in his guilt, and that the defendants therefore treated the money so retained by him as an ordinary debt, then they were not to treat the fact of the plaintiff having received and failed to account for the money, standing alone, as sufficient to constitute probable cause.

This construction of the prayer leaves no ground for objection on the part of the appellant, and we think, in view of the other instructions granted, that the jury must have so understood it.

We find no error in the rulings of the Court in the second, third, eighth and ninth exceptions. The appellee had a right to show the nature and extent of his claim against the appel-

lant, and how the appellant treated and regarded his use of the money which it subsequently charged him with having embezzled, as reflecting not only upon his own conduct, but the question of the good faith of the appellant. The evidence excepted to in the first exception, viz: that Mr. Trippe said "there wasn't a jury in the country that would decide the way Mr. Blackburn said," was immaterial and could not have prejudiced the appellant. It does not appear from the record that the question objected to in the fifth exception was answered by the witness, and the evidence in the sixth exception was taken subject to exception, and there was no motion afterwards to strike it out, while the record shows that the evidence referred to in the seventh exception was excepted to by the plaintiff and not by the defendant. If the question excepted to is not answered, the party excepting is not injured, and where evidence is admitted subject to exception, and there is no motion to strike it out, the party excepting cannot get the benefit of his exception in this Court. *Lawson* v. *Price,* 45 Md. 123; *Roberts* v. *Bonaparte,* 73 Md. 191.

The evidence referred to in the fourth exception was not admissible. The nar. does not allege special damages, and the plaintiff in his proof should have been confined to such damages as necessarily resulted from the facts alleged, and should not have been allowed to show, under the circumstances, that he was not able to do as much work after his imprisonment as he could do before, and could not sleep, etc. 1 *Poe's P. & P.* Sec. 584; *Ellicott* v. *Lamborne,* 2 Md. 136; *McTavish* v. *Carroll,* 13 Md. 429; *Webster* v. *Woolford,* 81 Md. 329.

But this evidence was not followed up by evidence showing that his inability to work, and his not being able to sleep, were due to his confinement in jail from Saturday evening to the following Monday, and the improbability of such results from so short an imprisonment, under the circumstances disclosed by the evidence, and the fact that the verdict in his favor was for only $425.00, would indicate that the jury, who had been properly instructed as to the measure of damages, did not take such evidence in consideration in reaching their verdict, and

that the appellant was not injured by its improper admission, and we would not therefore be justified in reversing the judgment on account of such error. *B. & O. R. R. Co.* v. *State, use of Hauer,* 60 Md. 459.

We will affirm the judgment below.

*Judgment affirmed with costs.*