# JOSEPH P. JORDAN

*vs.*

# THE JAMES & HOLSTROM PIANO CO. ET AL.

*Malicious Prosecution—Probable Cause—Motive—Embezzlement by Agent—Custom—Costs on Appeal—*
*Printed Argument.*

Plaintiff must prove, not only that the prosecution was instigated by defendant and that it terminated in an acquittal, dismissal, or abandonment, but also that there was no probable cause for defendant's action.                                    p. 209

It is wholly immaterial whether the accused was actually guilty, if the facts known to defendant were such as to lead "a cautious man" to that conclusion.                          p. 209

Want of probable cause is not to be inferred merely because defendant may appear to have been actuated by malice in promoting the prosecution, although from the want of probable cause an inference of malice may be justified.                  p. 209

The sufficiency of the evidence to prove want of probable cause is a question which the court is authorized to decide.

p. 210

A retail dealer, to whom pianos were consigned by the manufacturer for sale on account of the latter, the proceeds to be collected by the consignee as agent and immediately remitted, having failed to remit or account for the proceeds of pianos sold, and having made reports which failed correctly to show what sales had been made and monies collected, *held* that there was probable cause for the action of the manufacturer in causing the dealer's prosecution for embezzlement.      pp. 211, 212

Where probable cause existed, it is immaterial that defendant instigated the prosecution of plaintiff as a means of enforcing payment of the latter's indebtedness to the former, or that he offered to refrain from criminal prosecution if plaintiff would repay the money misappropriated by him.          p. 213

There being probable cause for a prosecution for embezzlement, the fact that the grand jury, before whom the defendant's complaint was made, indicted plaintiff for larceny as well as for embezzlement imposes no liability upon defendant. p. 213

The refusal to allow a witness to testify as to the contents of a letter is not a subject for review, if the letter itself was not relevant.                    p. 213

Evidence as to a custom, which is in conflict with the terms of the contract defining the rights and duties of the parties, is incompetent.                    p. 214

Under Rule 40 of the Court of Appeals, the appellee will, on affirmance, be allowed the cost of his printed argument only to the extent to which it does not exceed the purposes of a brief, which is defined by Rule 39 as "an abstract of the case and a full and explicit statement of the several points relied on, with the authorities sustaining them, accurately cited, and distributed under their proper heads."                    pp. 214, 215

*Decided January 13th, 1922.*

Appeal from the Court of Common Pleas of Baltimore City (Bond, J.).

Action by Joseph P. Jordan against The James & Holstrom Piano Company and another. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Adkins, and Offutt, JJ.

*J. Cookman Boyd,* with whom was *Thomas E. Mason* on the brief, for the appellant.

*Allan H. Fisher* and *Samuel J. Fisher,* with whom were *Henry H. Harkavy* and *Fisher & Fisher* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

On this appeal from a judgment for the defendants in an action for malicious prosecution, the chief inquiry is whether the evidence is legally sufficient to prove that the prosecution was without probable cause. The plaintiff was indicted for the embezzlement of $174, being part of the proceeds of the sale of pianos consigned to him as agent of the James and Holstrom Piano Company, one of the defendants, and for the larceny of a piano so consigned. There was evidence tending to prove that the defendant just named, and its auditor, Louis Goldman, who is a co-defendant, were instrumental in procuring the indictments. It was upon the testimony of Goldman, acting on behalf of the piano company, that the indictments were returned. After being acquitted on both charges the plaintiff brought this suit.

The principles of law governing the case will first be stated, and they will then be applied to the undisputed facts shown by the evidence offered on behalf of the plaintiff, at the close of which a verdict was directed for both defendants on the ground that the evidence was legally insufficient to prove a want of probable cause for the prosecution.

It is a well established rule that, in order to recover in a suit of this kind, it is necessary for the plaintiff to prove, not only that the prosecution of which he complains was instigated by the defendant and that it terminated in an acquittal, dismissal or abandonment, but also that there was no probable cause for the defendant's action. These are all essential elements of the plaintiff's case, and unless he proves each of them, he is not entitled to have the case submitted to the jury. The accepted definition of probable cause is: "Such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing the party accused to be guilty." It has been held to be wholly immaterial whether or not the accused was actually guilty, if the facts known to the defendant were such as to lead "a cautious man" to that conclusion. The want of probable cause is not to be inferred merely be-

cause the defendant may appear to have been actuated by malice in promoting the prosecution, although from the want of probable cause an inference of malice may be justified. Whether the evidence is legally sufficient to prove the want of probable cause is a question which the court is authorized to decide.    These propositions have all been frequently affirmed.    *Chapman* v. *Nash,* 121 Md., 608; *Moneyweight Co.* v. *McCormick,* 109 Md. 170; *Hooper* v. *Vernon,* 74 Md. 136; *Thelin* v. *Dorsey,* 59 Md. 539; *Boyd* v. *Cross,* 35 Md. 197. *Cooper* v. *Utterbach,* 37 Md. 318; *Stansbury* v. *Fogle,* 37 Md. 381; *Medcalfe* v. *Brooklyn Life Ins. Co.,* 45 Md. 205; *Hyde* v. *Greuch,* 62 Md. 577; *Torsch* v. *Dell,* 88 Md., 459; *Sappington* v. *Fairfax,* 135 Md. 186.

The evidence offered by the plaintiff has inclined us to the view that he probably had no criminal intent in the transactions to which the indictments refer, but we agree with the trial court that his conduct, as it appeared to the defendants, was such as to warrant their belief to the contrary.

The relations between the plaintiff, who is a retail dealer in musical instruments, and the defendant corporation, which manufactures pianos, began in March, 1918.    At that time they entered into an agreement for the consignment of pianos by the company to the plaintiff upon terms and under conditions uniformly stated in the receipt signed for each of the subsequent deliveries.    It was therein stipulated that the consignee might sell the pianos, "but only on account of consignor," and whether sold for cash or on the installment plan, at not less than the prices specified, the proceeds should be collected by the consignee as agent of the consignor and remitted to it immediately, and the consignee should thereupon become entitled to be paid by the consignor, as compensation for his services in making such sales, the difference between the "consigned value" of the pianos and the amount actually received.    It was provided that the title to the pianos shoud remain in the consignor and they should be subject to its order at all times until it should be paid the full amount of the consigned value.

Upon the basis of the agreement of which we have outlined the essential features a number of pianos were successively shipped to the plaintiff during a period of about a year and a half, and his accounting for the proceeds of his sales was conducted in apparent conformity with his contractual duty. But in October, 1919, the defendant, Goldman, auditor of the piano company, visited the plaintiff's place of business in Baltimore and discovered that he had failed to remit $174, which he had received as monthly payments on pianos sold on the installment plan, and that he had retained $655 paid him for pianos sold on cash terms, but for which he had not yet obtained full settlement. Most of the installment sums, as to which the plaintiff was thus found to be delinquent, had been received by him during periods covered by reports which purported to include all collections made by him between the dates they designated. A stock report, made by the plaintiff under date of October 7th, 1919, represented as being in stock several pianos which had in fact been sold and for the partial payments on which he had not accounted. It was about October 23rd that Goldman made his visit to the plaintiff's store and discovered the facts we have noted. There was a promise by the plaintiff to pay within a week the amount of the deficiency on the installment sales, but he claimed that he was not accountable to the company for the sums paid him on cash sales until he had received the whole of the purchase price. This claim was directly in conflict with the plain terms of the contract under which the pianos had been consigned. No payment having been made by the plaintiff of any part of the collections as to which he was found to be in default, the defendants, towards the end of November, 1919, initiated the prosecution which has occasioned the pending suit.

There can be no doubt that in selling the consigned pianos and in collecting the proceeds of the sales the plaintiff acted solely and strictly in the capacity of the consignor's agent. This is made perfectly clear by the terms of the agreement under which the instruments were received and sold. It is

certain also that the plaintiff collected considerable sums of
money for the piano company which he failed to report and
pay, and which he has retained in spite of its repeated de-
mands.   There is no claim that the amount as to which he
is thus in default is offset by compensation due him from
the company for his services in making the sales and collec-
tions under the contract.   Even if there were such a claim,
it could not impair the company's ownership of the proceeds
of the sales, and its right to receive the money before any
compensation to the plaintiff should be payable.   The pro-
visions of the agreement on this point are explicit.   There
is no evidence from which it could be found, as in *Money-
weight Co.* v. *McCormick, supra,* that the company regarded
or treated the plaintiff's liability in respect to the retained
funds as an ordinary debt.   The fact that they had been
collected was not reported to the piano company, although
the prompt disclosure of all the collections was a positive
contractual duty.   This omission to report would naturally
appear to the defendants to be an intentional concealment.
As thus regarded, the plaintiff's delinquency had the aspect
of being fraudulent.   It, therefore, presented every indica-
tion of embezzlement, which consists in the fraudulent ap-
propriation or conversion of the personal property of another
by one to whom it has been entrusted or who has otherwise
received it rightfully.   *Baugh* v. *Moore,* 122 Md. 153; *Hoch-
heimer, Crim. Law* (2nd Ed.), sec. 313, p. 345; 20 *C. J.*
407; *Code,* art. 27, sec. 112.

The circumstances, as they appeared to the defendants,
were sufficient to warrant a genuine belief in the plaintiff's
guilt.   There was nothing in his conduct or communications
subsequent to the defendants' discovery of the shortage in
his accounts to detract from the reasonableness of their con-
viction that he had appropriated the money with a fraudulent
intent.   It is with sole reference to the facts known to the
defendants at the time they originated the prosecution that
the question as to whether they had probable cause for their
action must be determined.   The explanations of the plain-

tiff, when testifying in this case, support the theory of his innocence, but his guilt was strongly suggested by the information upon which the defendants acted. From the uncontradicted evidence in the case there could be no rational inference that the prosecution was set in motion by the defendants without probable cause.

It was argued that the processes of the criminal law were threatened and employed by the defendants for the purpose of enforcing the payment of their claim. But, as this Court said in *Moneyweight Co.* v. *McCormick, supra,* "a party has the right to recover as a debt money obtained from him by fraud or embezzlement," and approval was there given to the view expressed in *Rankin* v. *Crane,* 104 Mich. 6, that where probable cause exists, the motive of the prosecutor is immaterial, and the want of probable cause could not be inferred from the fact that the defendant offered to refrain from criminal prosecution if the plaintiff would repay the money he had misappropriated.

As the prosecution to which this suit relates was through the action of the grand jury, before whom the defendants' complaint was made, the fact that the resulting indictments included a charge of larceny with that of embezzlement cannot be held to affect the question of probable cause as here presented. It was a single prosecution, so far as the defendants were concerned, and there is nothing in the record to suggest that they had any part in making the technical distinction between the closely related crimes of embezzlement and larceny, which are charged in the two indictments.

There are eleven exceptions relating to the admissibility of evidence. The first of these has been abandoned. The second was taken to the refusal of the trial court to allow a witness to testify as to the contents of a letter from the plaintiff's son to the purchaser of one of the pianos. It does not appear that the letter was relevant, and hence the question as to the sufficiency of the reason for its non-production need not be considered.

The third, fourth, fifth, and sixth exceptions refer to a
written statement prepared by the piano company, showing
the unpaid amounts of the consigned values of pianos deliv-
ered to the plaintiff, to which statement was added a list of
expenses which the company had incurred. The statement
was admitted, with the exception of the expense items, and
the exclusion of those items could not have caused the plain-
tiff any prejudice.

The seventh exception was reserved because the court
would not allow an inquiry to be made as to the collections
on account of the pianos after the criminal proceeding was
instituted. This was clearly immaterial.

By the eighth exception the plaintiff objected to the re-
fusal to permit his daughter, who served as his bookkeeper,
to be asked whether it was according to custom in a business
of that kind to delay remittance of a partial payment of
twenty-five dollars on the first installment of fifty dollars of
the purchase price of a piano until the balance of the install-
ment was received. Testimony to that effect would have
been incompetent, because in conflict with the terms of the
contract by which the rights and duties of the parties were
defined. *Mercantile Trust Co.* v. *Rode,* 137 Md. 362; *Jar-
rett* v. *Staum,* 138 Md. 217.

The ninth, tenth, and eleventh exceptions relate to occur-
rences, after the prosecution had terminated, which had no
relevancy to the issues to be determined.

In affirming the judgment, we find it necessary to refer
specially to the subject of the costs. The appellees filed an
admirable printed argument covering seventy-four pages.
It was filed as a brief, and if it could, as a whole, be cor-
rectly so described, under our rules, the cost of printing it
would be chargeable to the appellant as the result of the
affirmance (Rule 38). A brief, as defined by Rule 39, is
"an abstract of the case and a full and explicit statement of
the several points relied on, with the authorities sustaining
them, accurately cited, and distributed under their proper
heads." By Rule 40 it is provided that: "Either party may

file written or printed arguments in any cause pending in the Court of Appeals, but the cost of such arguments shall not be taxed as part of the cost of the cause excepting as provided for in Rule 38." The exception for which Rule 38 provides is that upon failure of either party to furnish copies of his brief to opposing counsel not less than three days before the case is called, the one not in default "may proceed with the oral argument and file within six days thereafter a printed argument in reply to the brief of the other side—the cost of printing the same to be taxed against and recovered from the party in default." The printed argument filed by the appellees is not within that exception. Only to the extent to which it does not exceed the purposes of a brief as defined by Rule 39 can the expense of having it printed be taxed among the costs of the appeal. An "abstract" of the present case and a "full and explicit statement of the several points relied on, with the authorities sustaining them," could, we think, have been presented in a brief of not more than twenty-five pages, and the clerk will be directed to tax the cost of the appellee's brief on the basis of that estimate.

*Judgment affirmed, with costs.*